E-FILED
Monday, 30 March, 2026  09:22:34 AM
Clerk, U.S. District Court, ILCD

# EXHIBIT "2"

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CENTRAL LABORERS' PENSION FUND, CENTRAL LABORERS' SUPPLEMENTARY PENSION FUND, CENTRAL LABORERS' ANNUITY FUND, CENTRAL LABORERS' WELFARE FUND, CENTRAL LABORERS' RETIREMENT WELFARE FUND, NORTH CENTRAL ILLINOIS LABORERS' HEALTH & WELFARE FUND, ILLINOIS LABORERS' & CONTRACTORS TRAINING PROGRAM, ILLINOIS LABORERS' - EMPLOYERS' COOPERATION & EDUCATION TRUST, MIDWEST REGION FOUNDATION FOR FAIR CONTRACTING, MIDWEST REGION FOR FAIR CONTRACTING, CENTRAL ILLINOIS BUILDERS INDUSTRY ADVANCEMENT FUND, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | No.  22-cv-2184-CSB-EIL |
| v. ) ) | |
| CENTURY ASPHALT AND CONSTRUCTION, INC. ) ) ) | |
| Defendant. ) | |

| STATE OF ILLINOIS | ) |
|---|---|
| | ) SS: |
| COUNTY OF MORGAN | ) |

## AFFIDAVIT OF KYLE FORSHEE

NOW COMES the Affiant, KYLE FORSHEE, and does hereby duly state under oath:

1.    I am over the age of eighteen and competent to testify to the matters set forth herein.

2.    I have personal knowledge of the facts stated in this Affidavit and, if called as a witness, could and would testify competently thereto.

3.    I am the Employer Contributions Department Director for the Central Laborers' Pension Fund, the Central Laborers' Welfare Fund, and the Central Laborers' Annuity Fund.

Page 1 of 11

4.     The Central Laborers' Pension Fund acts as a collection agent for the other named plaintiffs in the above-captioned case and coordinates collections of contributions and other amounts owed to them under applicable collective bargaining agreements.

5.     As part of my duties as Employer Contributions Department Director, I am responsible for coordinating collections for Central Laborers' Pension Fund and the other named plaintiffs in the above-captioned case (collectively the "Funds").

6.     The Funds are multiemployer employee benefit funds that provide pension, health, welfare, and other benefits to the employees of various employers who make contributions to the Funds and other plaintiffs pursuant to collective bargaining agreements between employers and local labor organizations, and in accordance with, to the extent applicable, the Funds' respective trust agreements.

7.     The Funds are administered pursuant to the terms and provisions of agreements and declarations of trust, as amended and restated (the "Trust Agreements").

8.     True and correct copies of relevant portions of the Trust Agreements are attached hereto as group Exhibit "A".

9.     As part of its normal operating procedures with respect to the collection of employer contributions, the Funds:

       a.     Maintain copies of applicable collective bargaining and other labor agreements signed by each employer;

       b.     Maintain copies of contribution reports submitted by each contributing employer;

       c.     Maintain a record of all hours of work reported and contributions and union dues which are owed and paid to the Funds by each contributing employer;

       d.     Perform payroll compliance audits to ensure that employers are complying with their obligations under the collective bargaining agreements and paying all contributions and union dues that are owed to the Funds under applicable collective bargaining and other labor agreements;

e.    Calculate or confirm contributions and check-off dues that are owed to the Funds based upon audits, monthly reports received from employers, and other information received or obtained by the Funds;

f.    Assess and calculate audit costs and other expenses, including attorney's fees and costs, owed to the Funds due to contributions that are paid late or that are delinquent and unpaid;

g.    Assess and calculate liquidated damages owed to the Funds on contributions that are paid late or that are delinquent and unpaid; and

h.    Review invoices for audit costs, attorneys' fees and costs, and other collection expenses to ensure the fees and costs are reasonable and necessary.

10.    I have reviewed and am familiar with the relevant business records and information maintained by the Funds in regard to Century Asphalt and Construction, Inc. ("Employer"), and am familiar with the present litigation, including the allegations asserted in the Complaint in this matter, and the exhibits to the Complaint, and based upon my review and familiarity with these records and information, state as follows:

a.    Employer is signatory or otherwise bound by various collective bargaining agreements, participation agreements, and non-bargaining unit alumni and non-bargaining unit employees participation agreements with various Laborers' local unions and/or the Funds" (the "Collective Bargaining Agreements");

b.    Employer is bound by the provisions of the Trust Agreements pursuant to the Collective Bargaining Agreements;

c.    Employer employs individuals who are participants in the employee benefit funds administered by the Funds;

d.    Employer must pay contributions to the Funds for each hour of work performed by its employees each month for work that is covered under the Collective Bargaining Agreements ("Contributions");

e.    Employer must pay "check-off" dues based upon each hour of work by its employees each month for work that is covered under the Collective Bargaining Agreements (collectively "Dues");

f.      Under the Collective Bargaining Agreements and Trust Agreements, Employer must prepare and submit completed Monthly Reports to the Funds each month, providing the information necessary to accurately calculate the Contributions and Dues owed to the Funds ("Monthly Reports"); and

g.      Under the Collective Bargaining Agreements and Trust Agreements, the Employer must submit Monthly Reports and remit any Contributions and Dues owed to the Funds by the 15th day of the month following the month in which the employees' hours were worked; and

h.      Under the Collective Bargaining Agreements and Trust Agreements, if the Employer fails to submit Monthly Reports and remit any Contributions and Dues owed to the Funds by the 15th day of the month following the month in which the employees' hours were worked, then the Contributions and Dues are delinquent.

11. A payroll examination was completed of Employer for the period of January 1, 2011 through February 28, 2017 and for the period of March 1, 2017 through December 31, 2022 by the Funds' auditor, Romolo & Associates, LLC ("Romolo & Associates").

12. Romolo & Associates prepared a written report of the findings of each payroll examination, which I have reviewed and evaluated.

13. A true and accurate copy of the payroll examination report for the period of January 1, 2011 through February 28, 2017 is attached to the Affidavit of Joseph Romolo in Support of Motion for Summary Judgment as Exhibit "A", which I have reviewed.

14. A true and accurate copy of the payroll examination report for the period of March 1, 2017 through December 31, 2022 is attached to the Affidavit of Joseph Romolo in Support of Motion for Summary Judgment as Exhibit "B", which I have reviewed.

15. Each payroll examination reviewed defendant's payroll records and identified unreported hours worked and wages earned by defendant's covered employees, together with the corresponding contributions and dues owed to plaintiffs for the relevant periods, calculated in

accordance with the contribution rates set forth in the applicable Collective Bargaining Agreements.

16.    The payroll examination covering the period of January 1, 2011 through February 28, 2017 determined that the Employer failed to report all hours worked and wages earned by its employees and failed to remit the required contributions and dues owed to the Funds, resulting in delinquent contributions and dues totaling $334,785.33.

17.    The payroll examination covering the period of March 1, 2017 through December 31, 2022 determined that the Employer failed to report all hours worked and wages earned by its employees and failed to remit the required contributions and dues owed to the Funds, resulting in delinquent contributions and dues totaling $1,174,552.35.

18.    The delinquent contributions and dues found due under the payroll examinations remain unpaid and delinquent as of the date of this Affidavit, and the Employer has not received extension of time to pay these amounts by the Trustees.

19.    Under the Trust Agreements, if an employer fails to pay contributions and dues within fifteen (15) days of the original due date, or within an extension granted by the Trustees by resolution, not to exceed forty-five (45) days, the employer must, in addition to the contributions and dues owed, pay liquidated damages equal to ten percent (10%) of the delinquent amounts or twenty-five dollars ($25.00), whichever is greater.

20.    Under the Trust Agreements, the Employer is liable for liquidated damages in an amount equal to ten percent (10%) of the delinquent and unpaid contributions and dues of $334,785.33 identified by the payroll examination covering the period of January 1, 2011 through February 28, 2017, which based on these totals, equals liquidated damages of $33,478.53.

21.    Under the Trust Agreements, the Employer is liable for liquidated damages in an amount equal to ten percent (10%) of the delinquent and unpaid contributions and dues of

Page 5 of 11

$1,174,552.35 identified by the payroll examination covering the period of March 1, 2017 through December 31, 2022, which based on these totals, equals liquidated damages of $117,270.79.

22.  The Funds incurred and paid audit costs of $2,455.00 to Romolo & Associates for the payroll examination covering the period of January 1, 2011 through February 28, 2017.

23.  A true and accurate copy of the invoice for the payroll examination for the period of January 1, 2011 through February 28, 2017 is attached hereto as Exhibit "B."

24.  The Funds incurred and paid audit costs of $3,679.33 to Romolo & Associates for the payroll examination covering the period of March 1, 2017 through December 31, 2022.

25.  A true and accurate copy of the invoice for the payroll examination for the period of March 1, 2017 through December 31, 2022 is attached hereto as Exhibit "C."

26.  Based on my experience as Employer Contributions Department Director and my familiarity with the typical costs of comparable employer audits, I believe these charges are fair, reasonable, and necessary to determine the extent of the Employer's delinquencies.

27.  Under the Trust Agreements and the Funds' polices, an employer is responsible for the entire cost of an audit if (1) an employer intentionally did not pay contributions to the Funds; or (2) an employer unintentionally did not pay contributions to the Funds, but the unpaid contributions exceed five percent (5%) of the total contributions paid by an employer during the audit period; or (3) the Funds have to file suit to compel the employer's cooperation with the audit.

28.  The Employer is responsible for the costs incurred by the Funds for each payroll examination for one or more of the following reasons:

   (a)  There is nothing in the payroll examinations to indicate that the Employer's failure to pay contributions was anything other than intentional on the part of the Employer;

   (b)  Even if the failure to pay contributions was unintentional, the Funds' review of the Employer's contribution history for the examination periods

determined the unpaid contributions exceed five percent (5%) of the total contributions paid by the Employer during each period; and

(c)    The Funds had to file suit to compel the Employer's cooperation with the audit.

29.    A true and correct copy of the Funds' calculation of audit costs based upon the review of the Employer's contribution history for the examination period of January 1, 2011 through February 28, 2017 is attached hereto herein as Exhibit D.

30.    A true and correct copy of the Funds' calculation of audit costs based upon the review of the Employer's contribution history for the examination period of March 1, 2017 through December 31, 2022 is attached hereto herein as Exhibit E.

31.    In addition to the amounts determined to be owed by the payroll examinations, the Fund Office has determined, based upon payroll information received from Employer's employees, that Employer owes additional contributions of $380.72 for unreported hours in June, July and October of 2015, and corresponding liquidated damages of $38.07, for a total of $418.79, calculated as follows:

(a)    These contributions were calculated in accordance with the contribution rates set forth in the applicable collective bargaining agreements for the area in which the work was performed by multiplying the applicable contribution rates by the number of hours worked by employees that were not reported to the Funds;

(b)    These contributions remain unpaid, and are delinquent because they were not paid to the Funds by the 15th day of the month following the month in which the employees' hours were worked and the Employer has not received extension of time to pay these amounts by the Trustees; and

(c)    These liquidated damages were calculated by multiplying the delinquent contributions by 10% in accordance with applicable provisions of the Funds' trust agreements.

32.    In addition to the amounts determined to be owed by the payroll examinations, the Fund Office has determined, based upon payroll information received from Employer's

employees, that Employer owes additional contributions of $229.46 for unreported hours during the period of May through October of 2016, and corresponding liquidated damages of $22.95, for a total of $252.41, calculated as follows:

(a)     These contributions were calculated in accordance with the contribution rates set forth in the applicable collective bargaining agreements for the area in which the work was performed by multiplying the applicable contribution rates by the number of hours worked by employees that were not reported to the Funds;

(b)     These contributions remain unpaid, and are delinquent because they were not paid to the Funds by the 15th day of the month following the month in which the employees' hours were worked and the Employer has not received extension of time to pay these amounts by the Trustees; and

(c)     These liquidated damages were calculated by multiplying the delinquent contributions by 10% in accordance with applicable provisions of the Funds' trust agreements.

33.     In addition to the amounts determined to be owed by the payroll examinations, the Fund Office has determined, based upon payroll information received from Employer's employees, that Employer owes additional contributions of $24,639.54 for unreported hours in August, October through December of 2023, and corresponding liquidated damages of $2,463.95, for a total of $27,103.49, calculated as follows:

(a)     These contributions were calculated in accordance with the contribution rates set forth in the applicable collective bargaining agreements for the area in which the work was performed by multiplying the applicable contribution rates by the number of hours worked by employees that were not reported to the Funds;

(b)     These contributions remain unpaid, and are delinquent because they were not paid to the Funds by the 15th day of the month following the month in which the employees' hours were worked and the Employer has not received extension of time to pay these amounts by the Trustees; and

(c)     These liquidated damages were calculated by multiplying the delinquent contributions by 10% in accordance with applicable provisions of the Funds' trust agreements.

34.     In addition to the amounts determined to be owed through the payroll examinations, the Fund Office has determined, based upon reporting information submitted by defendant in its Monthly Reports, that defendant incorrectly calculated certain contributions owed to the Funds and therefore owes additional contributions in the amount of $5,754.82 for contribution shortages relating to hours worked by its employees in June, July, and August 2022.

35.     The Employer also owes liquidated damages of $5,970.73, for liquidated damages assessed on contributions that were paid late over the period of November 2014 through October 2023. These contributions were paid after their original due dates without any extension granted by the Trustees and resulted in the assessment of liquidated damages, calculated by multiplying the contributions by 10% in accordance with applicable provisions of the Funds' trust agreements.

36.     The Employer is entitled to a credit in the amount of $1,844.41, which operates as an offset against the amounts otherwise due to the Funds.

37.     In total, after applying all applicable credits and excluding attorneys' fees and costs, the Employer owes the Funds a balance of $1,703,877.16, based upon the payroll examinations and other reporting information maintained by the Funds.

38.     A true and accurate summary and breakdown of the calculations of the amounts owed to the Funds is attached hereto and incorporated herein as Exhibit "F."

40.     Exhibit F was prepared by the Funds in accordance with their regular and customary procedures for determining contributions, dues, and liquidated damages owed, based upon records maintained by the Funds in the ordinary course of their operations.

41.     The Employer failed to comply with its contractual and statutory obligations by failing to accurately report hours worked, failing to remit contributions and dues owed to the Funds after demand, and failing to cooperate with the Funds' request for a payroll examination.

42.     As a result of the Employer's noncompliance, the Funds were required to retain legal counsel and incurred attorneys' fees and costs in connection with efforts to collect delinquent contributions owed by the Employer and to compel the Employer's compliance with its obligations under the Collective Bargaining Agreements and Trust Agreements.

43.     The Trust Agreements provide that the Funds are entitled to recover the reasonable attorneys' fees and costs incurred in enforcing the Funds' contractual and statutory rights to collect delinquent contributions owed by the Employer and to compel the Employer's compliance with its obligations under the Collective Bargaining Agreements and Trust Agreements.

44.     The Funds have incurred attorneys' fees and costs in this matter in the amount of $35,146.17.

45.     Based upon my experience as Employer Contributions Department Director, my familiarity with employer contribution collection matters, and my knowledge of the legal work required to pursue this action, the attorneys' fees and costs incurred by the Funds were reasonable and necessary to enforce the Funds' contractual and statutory rights.

46.     The amounts, reasonableness and necessity of those fees and costs are further documented in the attorney fee affidavit attached as an exhibit to the Funds' Motion for Summary Judgment, which I have reviewed.

47.     The attorneys' fees and costs incurred in connection with this matter have been or will be invoiced to the Funds and have been or will be paid by the Funds in the ordinary course of business.

48.     The statements contained in this Affidavit are true and correct based upon my personal knowledge.

FURTHER AFFIANT SAYETH NOT.

████████

_____
KYLE FORSHEE

SUBSCRIBED and SWORN to a Notary Public this 24 day of March, 2026.

████████████████

_____
NOTARY PUBLIC

**OFFICIAL SEAL**
**ANNE M MOGG**
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 5/15/27

# EXHIBIT "A"

# RESTATED AGREEMENT

# AND

# DECLARATION OF TRUST

# OF THE

# CENTRAL LABORERS'

# PENSION FUND

selection within thirty (30) days, shall jointly petition the Circuit Court of Morgan County, Illinois, for the selection of the third arbitrator by a judge of said Court.

(b)    The questions for the arbitrators shall be whether, in the particular instance, the Claim Committee (1) was in error upon an issue of law, (2) acted arbitrarily or capriciously in the exercise of its discretion, or (3) whether its findings of fact were supported by substantial evidence.

(c)    The decision in writing of any two arbitrators shall be final and binding upon the Claimant and the Trustees. The procedures specified in this Section shall be the sole and exclusive procedures available to a Claimant.

(d)    The arbitration shall be conducted in Morgan County, Illinois, in accordance with the usual rules governing procedure and admission of evidence in Courts of law in said County and State.

(e)    Each party to the arbitration shall pay his or its chosen arbitrator and shall bear equally the expense of the third arbitrator and all other expenses of the arbitration.

## ARTICLE VI

## CONTRIBUTIONS TO THE FUND

**Section 1. BASIS OF CONTRIBUTIONS TO PLAN.** In order to effectuate the purpose hereof, each Employer shall contribute to the Fund the amount required by any written agreement as defined herein between the Union or the Trust and the Employer. The rate of contributions shall at all times be governed by the applicable written Agreement then in force and effect, together with any amendments, supplements or modifications thereto provided, however, that in the case of an Employer who is required to make contributions by reason of his being party to a written agreement other than a Collective Bargaining Agreement the amount of contribution required shall be identical to the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Local Union having jurisdiction over the geographical area in which the covered Employees perform work. It shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any employee purporting to waive the employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or other written agreement. With respect to the amount of contributions required thereby no employee shall be permitted to contract or otherwise agree with or permit his employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 2. EFFECTIVE DATE OF CONTRIBUTIONS.** All contributions shall be made effective as required by the applicable written agreement and shall continue to be paid as long as the Employer is so obligated.

20

<u>Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.</u>
The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees of all records of the Employer as described in Article IV, Section 8, in connection with the Employer's contributions and/or reports.

All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Fund forward unless given written authorization for variance by the Administrator. All such records shall be maintained for a period of ten (10) years unless earlier destruction of the same is authorized by the Trustees. The Trustees shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, after being requested to do so by the Trustees, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.

Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any of the requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent personal liability for owners or partners who are not otherwise incorporated.

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 hereinbelow, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed, and failure to pay liquidated damages duly assessed shall constitute a default in payment pursuant to Section 6 of this Article.

<u>Section 4. BOND OR DEPOSIT</u>. The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees, the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), nor more than Fifteen Thousand Dollars ($15,000.00) or an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees, whichever is greater, secured by a corporate surety.

<u>Section 5. MODE OF PAYMENT</u>. All contributions shall be due and payable on the

21

fifteenth (15th) day of the month next following the calendar month in which eligible employees perform work with respect to which contributions are required. The time for payment may be extended by the Trustees by resolution, but in no event shall such extension exceed forty-five (45) days in accordance with applicable regulations issued by the Secretary of Labor pursuant to ERISA.

Section 6. DEFAULT IN PAYMENT. Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.

Section 7. LIQUIDATED DAMAGES. All Employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provided above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or Twenty-five Dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however, each Employer acknowledges these costs to be minimally ten percent (10%) of the delinquent contributions or Twenty-five Dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

Section 8. INTEREST. Delinquent contributions shall bear interest at such rate as may have been established by the Trustees prior to determining the existence of the delinquency. Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest. The Trustees shall have the authority to waive the foregoing interest charge in the event the delinquent Employer executes a note or enters into an installment payment agreement providing for payment of said delinquency on such terms as acceptable to the Trustees under the circumstances.

Section 9. COLLECTION COSTS. Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including court fees, attorneys' fees, filing fees, and any other expenses actually incurred by the Trustees in the course of the collection process.

Section 10. AUDITS AND THE COSTS THEREOF. The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Pension Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, audit cost, and any other expenses actually incurred by the Trustees in the course of the action, without regard to whether the Employer did or did not owe delinquent contributions.

In the event an audit determines that there are no delinquent contributions due the Fund, other than in situations as noted in the above paragraph, the Fund shall pay the entire Audit Cost. In the event the audit determines that there are delinquent contributions due the Fund which were

22

intentionally not paid by the Employer, the entire Audit Cost shall be assessed against the Employer. Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by the bank or other institution on which it is drawn and shall include non-payment due to lack of funds on the part of the Employer.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed a proportion of the audit costs, if any, based upon a formula which shall be set from time to time by the Trustees in their discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed.

Section 11. REFUND OF CONTRIBUTION. Upon application by the payor, the Fund may refund to the payor contributions it has paid to the Fund in error, being contributions which were not due and payable to this Fund in the first place, provided (a) application for a refund is made to the Fund office within sixty (60) months of the date the same were paid to the Fund, and (b) it is determined by the Fund that the previous receipt and acceptance of said contributions by the Fund has not and will not create any reasonably foreseeable liability on the part of the Fund.

## ARTICLE VII

## PLAN OF BENEFITS

Section 1. BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided based on what it is estimated the Fund can provide without undue depletion or excessive accumulation, provided, however, that the Trustees shall exercise such authority within the limits and in accordance with the requirements of Title I, Subtitle B, Part 2, or any other applicable provisions of ERISA and any applicable rules and regulations promulgated pursuant thereto.

The Board of Trustees shall draft procedures, regulations and conditions for the operation of the Plan, including by way of illustration and not limitation; condition of eligibility for Employees, procedure for claiming benefits, schedules of type and amount of benefits to be paid, and procedure for the distribution of benefits; provided, however, that all such rules and regulations adopted by the Trustees shall be general in their application and no special or particular treatment shall be accorded to any employee.

Section 2. RECIPIENT OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article only for Employees (as defined in ARTICLE I, Section 2, of this Agreement), their families and/or dependents.

Section 3. ELIGIBILITY REQUIREMENT FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their dependents.

Section 4. BASIS OF PROVIDING BENEFITS. Benefits shall be provided and

23

## CREATION OF ANNUITY PLAN

Section 1. CREATION OF ANNUITY PLAN. The Trustees shall establish and operate an Annuity Plan to be known as Central Laborers' Annuity Plan and all provisions and powers and duties of this Trust Agreement and Amendments thereto pertaining to a Pension Plan shall apply with equal force and effect to establishing, maintaining, and operating said Annuity Plan where appropriate.

Section 2. QUALIFIED PLAN. The Central Laborers' Annuity Plan shall be a qualified plan in accordance with the requirements of the Internal Revenue Code so that all employer contributions thereto may be treated as a deduction for income tax purposes.

Section 3. SEPARATE ENTITY. The Central Laborers' Annuity Plan shall be a separate entity from Central Laborer's Pension Fund and all matters pertaining to said Annuity Plan including all monies, income, expenses, and records shall be kept and held separate and apart from Central Laborers' Pension Fund. The Board of Trustees of Central Laborers' Pension Fund shall adopt rules and regulations pertaining to the operation of Central Laborers' Annuity Plan and shall adopt by resolution from time to time such procedures as it may deem appropriate to facilitate maintaining and operating said Annuity Plan.

IN WITNESS WHEREOF, the Associations or Employers and the Union, by their undersigned authorized representatives have executed this instrument on the 27th day of April, , 1999.



LABOR TRUSTEES                              MANAGEMENT TRUSTEES

29

# RESTATED AGREEMENT
# AND
# DECLARATION OF TRUST
# OF THE
# CENTRAL LABORERS'
# WELFARE FUND

**2003**

## TABLE OF CONTENTS

ARTICLE I. DEFINITIONS

Section 1 Employer
Section 2 Employee
Section 3 Union
Section 4 Association
Section 5 Trustees
Section 6 Agreement and Declaration of Trust
Section 7 Plan
Section 8 Fund
Section 9 Contributions
Section 10 Benefits
Section 11 Written Agreement
Section 12 Administrator
Section 13 ERISA

ARTICLE II. CREATION OF WELFARE FUND

Section 1 Establishment of Fund
Section 2 General Purposes

ARTICLE III. TRUSTEES

Section 1 Union and Employer Trustees
Section 2 Trustees
Section 3 Acceptance of Trusteeship
Section 4 Term of Trustees
Section 5 Form of Notification
Section 6 Vacancies
Section 7 Insurance
Section 8 Bonding

ARTICLE IV. POWERS, DUTIES, AND OBLIGATIONS S OF TRUSTEES
              AND OTHER PERSONS

Section 1 General
Section 2 Liability of Trustees
Section 3 Property and Services
Section 4 Construction of Agreement
Section 5 General Powers
Section 6 Reasonable Compensation of Trustees
Section 7 Duty to Cooperate
Section 8 Committees of the Board of Trustees

Section 9 Appointment of Executive Administrator
Section 10 Books of Account
Section 11 Execution of Documents
Section 12 Deposit and Withdrawal of Funds
Section 13 Merger with Other Funds
Section 14 Prohibited Transactions

ARTICLE V. CONTRIBUTIONS TO THE FUND

Section 1 Basis of Contributions to the Plan
Section 2 Effective Date of Contributions
Section 3 Report on Contributions and Production of Records
Section 4 Bond or Deposit
Section 5 Mode of Payment
Section 6 Default in Payment
Section 7 Liquidated Damages
Section 8 Interest
Section 9 Collection Costs
Section 10 Audits and the Costs Thereof
Section 11 Refund of Contribution

ARTICLE VI. PLAN OF BENEFITS

Section 1 Benefits
Section 2 Recipient of Benefits
Section 3 Eligibility Requirement for Benefits
Section 4 Basis of Providing Benefits
Section 5 Written Plan of Benefits
Section 6 Treasury Approval
Section 7 Amendment of Plan

ARTICLE VII. MEETING AND DECISION OF TRUSTEES

Section 1 Officers of Trustees
Section 2 Meeting of Trustees
Section 3 Quorum
Section 4 Equalized Voting
Section 5 Deadlock of Board of Trustees
Section 6 Minutes of Meeting

ARTICLE VIII. AMENDMENT OF TRUST AGREEMENT

Section 1 Amendment by Trustees
Section 2 Limitation of Right to Amendment
Section 3 Notification of Amendment

## ARTICLE IX. TERMINATION OF TRUST

Section 1 By the Trustees
Section 2 By the Parties
Section 3 Procedure on Termination
Section 4 Notification of Termination

## ARTICLE X. MISCELLANEOUS PROVISIONS

Section 1 Termination of Individual Employers
Section 2 Vested Rights
Section 3 Situs
Section 4 Construction of Terms
Section 5 Certification of Trustees Actions
Section 6 Notification of Trustees
Section 7 Severability
Section 8 Withdrawal of Union
Section 9 Trustee Indemnification

SIGNATURE PAGE

## RESTATED AGREEMENT AND DECLARATION OF TRUST
## OF THE
## CENTRAL LABORERS' WELFARE FUND

WHEREAS, there has heretofore been entered into an Agreement and Declaration of Trust, effective as of the 30th day of March, 1966, by and between Laborers' Local # 253, affiliated with the Laborers' International Union of North America, hereinafter referred to as the "Local Union", and various Local Unions and Employers as hereinafter defined who are or who may become parties to this Agreement and Declaration of Trust and who now or may hereafter have Collective Bargaining Agreements requiring contributions to the Welfare Fund established pursuant to this Agreement and Declaration of Trust.

WHEREAS, the ASSOCIATIONS and other EMPLOYERS have heretofore entered into certain agreements, with the union or with representatives of the Trust created hereby, which agreements may be amended from time to time and which agreements provide for certain contributions to be made to the Welfare Fund, created and established hereby for the purpose of providing benefits for employees as hereinafter defined pursuant to a Welfare Plan or plans established and amended by the Trustees from time to time, which plan or plans shall become qualified in accordance with the requirements of the Internal Revenue Code; and the parties desire to establish a Welfare Trust Agreement under which the money paid for welfare benefits will be held in trust in accordance with the terms of this document.

WHEREAS, said Agreement and Declaration of Trust has heretofore been amended; and

WHEREAS, under Article VIII, of said Agreement and Declaration of Trust, the said Trustees have the power and authority to amend such Agreement and Declaration of Trust from time to time as therein provided; and

WHEREAS, it is determined to be desirable to amend said Agreement and Declaration of Trust and to restate the same as to incorporate therein all amendments adopted heretofore or as part of this restatement;

NOW, THEREFORE, the Trustees, designated and in office, as such, have executed this Restated Agreement and Declaration of Trust as indicating their acceptance of the respective duties imposed upon them as Trustees under the terms of this Agreement, to read as follows:

NOW, THEREFORE, in consideration of the premise IT IS HEREBY AGREED AS FOLLOWS:

## ARTICLE I

## DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern this Agreement.

**Section 1. EMPLOYER.** The term "Employer" as used herein shall mean any Employer who:

(a)     now or hereinafter is a party to a collective bargaining agreement with the Union, requiring periodic contributions to the Welfare Fund created by this Trust Agreement or who in the past has been a party to such a collective bargaining agreement, if such agreement has not been terminated by its terms or by operation of law; or

(b)     is a party to any memorandum of understanding or memorandum of agreement or similar instrument with the Union, which by its terms incorporates by reference a complete collective bargaining agreement which requires the parties thereto to make contributions to the Fund; or

(c)     in writing adopts and agrees to be bound by the terms and provisions of this Agreement as the same may be amended or modified from time to time; PROVIDED, HOWEVER, that to the extent that this definition includes any entity or person who meets the definition or concept of a "non-bargaining unit employer", and/or who employs a person who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401 (a) of the Internal Revenue Code; PROVIDED FURTHER, that all non-bargaining unite employers must be in compliance with the Non-Bargaining Unit Policy and Procedures of the Cental Laborers' Welfare Fund; or

(d)     is a party to any written instrument which evidences an agreement to be bound by the provisions of this Trust Agreement, including but not limited to, a contribution report form listing the employees on whose behalf contributions are remitted and provisions expressly binding such Employer to this Trust Agreement or otherwise evidencing such Employer's intention to be so bound by the making of such contributions; or

(e)     by any course of conduct, including but not limited to, oral representations to Employees, representatives of the Union, Trustees, attorneys or other persons, ratifies or accepts the provisions of any collective bargaining agreement which requires contributions to the Fund created hereby or of this Trust Agreement itself, or of any other written instrument which binds such Employer to make

2

contributions to the Fund, or is estoppel to deny such obligation; or

(f)     is a member of any of the Employer Associations, or hereafter becomes a member of any of said Associations, names herein or who was a member at any time when representatives of said Associations commenced negotiations of the current collective bargaining agreement on behalf of its members whether or not said membership is held current at all times; or

(g)     is a member of any other multi-employer bargaining unit, or hereafter becomes a member of any of said multi-employer bargaining units, which has a collective bargaining agreement with the Union, whether formalized or existing solely as a matter of custom and practice.

The term "Employer," shall also mean the Union, for the purpose of providing benefits hereunder for the eligible Employees of the Union for whom the Union is obligated to contribute to the Welfare Fund.

The term "Employer," shall also mean the Board of Trustees for the purpose of providing benefits hereunder for the eligible Employees of the Trust for whom the trust shall make contributions to the Welfare Fund, in accordance with the Plan as said term is hereinafter defined.

Section 2. EMPLOYEE.  The term "Employee," as used herein, shall mean any of the following persons without regard to race, sex, color, creed, national origin, religion or union membership.

(a)     any person covered by a collective bargaining agreement between an Employer and the Union who is engaged in employment with respect to which the Employer is obligated by the collective bargaining agreement to make contributions to the Welfare Fund;

(b)     any person employed by an Employer who performs work within the jurisdiction of the Union as said jurisdiction is set forth in any applicable collective bargaining agreement or by any custom or practice in the geographic area within which the Employer operates and is Employees perform work; or

(c)     any person on whose behalf an Employer has made contributions to the Fund and has reported same on a standard report form which contains a provision binding said Employer to the provisions of this Trust Agreement or otherwise evidencing said Employer's intent to be so bound; or

(d)     any person employed by an Employer who has signed any memorandum of understanding incorporating by reference the provisions of any applicable

3

collective bargaining agreement or the provisions of this Trust Agreement where such person is covered by such agreements to be incorporated by reference or both; or

(e)   any person who is not covered by a collective bargaining agreement but on whose behalf his Employer is otherwise obligated to make contributions to the Fund in accordance with the provisions of this Trust Agreement who performs work which would be work performed by member of a bargaining unit recognized by the Employer or certified by the National Labor Relations Board if said person's Employer were a party to any of the standard collective bargaining agreements by and between the Union and any of the Associations defined herein; PROVIDE, HOWEVER, that to the extent that this definition includes any person who meets the definition or concept of a "non-bargaining unit employee" and/or who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401 (a) of the Internal Revenue Code: or

(f)   any Employee in a certified or recognized collective bargaining unit represented by the Union.

The term "Employee" shall also mean all eligible persons employed by the Union, on whose behalf the Union shall make payments to the Trust at the times and at the rate of payment equal to that make by any other Employer who is a party to the Trust.

The term "Employee" shall also mean all eligible persons employed by the Trust on whose behalf the Board of Trustees shall make payments to the Trust, out of the Trust Fund at the times and at the rate of payment equal to that made by any other Employer who is a party to that Trust.

**Section 3.  UNION.**  Such representative of the Laborers' International Union of North America and its District Councils that may enter into Collective Bargaining Agreement or written agreements requiring contributions to this Trust, or such representatives of other labor organizations or trades and crafts approved for participation by the Trustees hereof.

**Section 4.  ASSOCIATION.**  The term "Association" shall mean WESTERN ILLINOIS CONTRACTORS' ASSOCIATION (successor to Morgan County Contractors' Association); and ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS.

**Section 5.  TRUSTEES.**

(a)   The term "Employer Trustees" shall mean the Trustees appointed by the various associations as hereinafter provided, and such Trustees shall represent all Employees as defined herein.  All employers bound to this Agreement ratify and confirm the appointment with the Employee Trustees and their Successors.

4

(b)  The term "Union Trustees" shall mean the Trustees appointed by the District Councils of the Laborers' International Union of North America as hereinafter provided who shall represent all Employees as defined herein and their families and dependents, as appropriate, according to the provisions of the Plan.

(c)  The term "Trustees" shall mean the Employer Trustees and Union Trustees collectively who shall have such powers, duties and obligations as set forth in Article IV hereof. All Trustees are hereby denominated "named fiduciaries" of the Fund.

**Section 6. AGREEMENT AND DECLARATION OF TRUST.** The term "Agreement and Declaration of Trust" shall mean this instrument, including any duly adopted amendments hereto and modifications hereof.

**Section 7. PLAN.** The term "Plan" shall mean the program of Welfare Benefits to be established by the Trustees pursuant to this Agreement and Declaration of Trust, provided, however, that such program shall be consistent with all applicable laws and regulations including, but not limited to, the Employees Retirement Income Security Act or 1974, as amended, hereafter called "ERISA".

**Section 8. FUND..** "Trust," "Trust Fund," and "Fund" as used herein shall mean the entire trust estate created pursuant to this Agreement as it may, from time to time, be constituted, including, but not limited to all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds and other sums payable to the Trustees on account of such contracts), all investments made and held by the Trustees, all income increments, earnings and profits therefrom, and any and all other property or funds received by the Trustees by reason of their acceptance of this Agreement and Declaration of Trust for the uses and purposes set forth herein.

**Section 9. CONTRIBUTIONS.** The term "Contributions" shall mean the monies paid to the Fund by Employer pursuant to applicable agreements as defined herein or as otherwise required hereby, which shall be held in trust for the purposes set forth herein.

**Section 10. BENEFITS.** The term "Benefits" shall mean payments, whether from the principal or income, or both, of the Fund for the benefit of Employees, their families and dependents.

**Section 11. WRITTEN AGREEMENT.** The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to the Fund together with any modification, amendment or renewals thereof, including, but not limited to collective bargaining agreements, memoranda of understanding which incorporate by reference collective bargaining agreements or this Trust Agreement, report forms in accordance

5

with which contributions are made and which obligate the Employer to the provisions of this Trust Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Trust Agreement and/or the Plan established pursuant hereto.

Section 12. ADMINISTRATOR. The Administrator of the Fund as that term is used in ERISA shall be the Trustees collectively.

Section 13. ERISA. The term "ERISA" as used herein shall mean the Employee Retirement Income Security Act of 1974, any amendments thereto and any regulations promulgated thereunder.

6

## ARTICLE V

## CONTRIBUTIONS TO THE FUND

Section 1. BASIS OF CONTRIBUTIONS TO PLAN.   In order to effectuate the purpose hereof, each Employer shall contribute to the Fund the amount required by any written agreement as defined herein between the Union or the Trust and the Employer. The rate of contributions shall at all times be governed by the applicable written Agreement then in force and effect, together with any amendments, supplements or modifications thereto, provided, however, that in the case of an Employer who is required to make contributions by reason of his being party to a written agreement other than a Collective Bargaining Agreement in the amount of contribution required shall be identical to the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Local Union having jurisdiction over the geological area in which the covered Employees perform work.  Ti shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any employee purporting to waive the employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or other written agreement.  With respect to the amount of contributions required thereby no employee shall be permitted to contract or otherwise agree with or permit his employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

Section 2. EFFECTIVE DATE OF CONTRIBUTIONS.  All contributions shall be made effective as required by the applicable written agreement and shall continue to be paid as long as the Employer is so obligated.

Section 3.  REPORT ON CONTRIBUTIONS AND PRODUCTION OR RECORDS. The Employers shall make all reports on contributions required by the Trustees.  Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Welfare Plan.  The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other persons as designated by the Trustees of all records of the Employer as described in Article IV, Section 8, in connection with the Employer's contributions and/or reports.

All Employers shall be required to maintain records in compliance with procedures develop and communicated by the Administrator from the beginning of such Employer's participation in the Fund forward unless given written authorization for variance by the Administrator. All such records shall be maintained for a period of ten (10) years unless earlier destruction of the same is authorized by the Trustees. The Trustees shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, after being requested to do so by the Trustees, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the result of said investigation shall be conclusive.

20

Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any will ful violation of any requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct. Nothing herein shall prevent personal liability for owner or partners who are not otherwise incorporated.

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 herein below, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed, and failure to pay liquidated damages duly assessed shall constitute a default in payment pursuant to Section 6 of this Article.

Section 4. BOND OR DEPOSIT. The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees, the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount of not less than Five Thousand Dollars ($ 5,000). nor more than Fifteen Thousand Dollars ($ 15,000) or an amount equal to three (3) times the monthly contributions of such Employer, as estimate by the Trustees, whichever is greater, secured by a corporate agency.

Section 5. MODE OF PAYMENT. All contributions shall be due and payable on the fifteenth (15th) day of the month next following the calendar month in which eligible employees perform work with respect to which contributions are required. The time for payment may be extended by the Trustees by resolution, but in no event shall such extension exceed forty-five (45) days in accordance with applicable regulations issued by the Secretary of Labor pursuant to ERISA.

Section 6. DEFAULT IN PAYMENT. Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payments of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.

Section 7. LIQUIDATED DAMAGES. All Employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provide above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or Twenty-five Dollars ($ 25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however, each Employer acknowledges these costs to be at least ten percent (10%) of the delinquent contributions o Twenty-five Dollars ($25.00), whichever

21

is greater, waiving the necessity of any additional proof thereof.

Section 8. INTEREST. Delinquent contributions shall bear interest at such rate as may have been established by the Trustees prior to determining the existence of the delinquency. Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest. The Trustees shall have the authority to waive the foregoing interest charge in the event the delinquent Employer executes a note or enters into an installment payment agreement providing for payment of said delinquency on such terms as acceptable to the Trustees under the circumstances.

Section 9. COLLECTION COSTS. Except as hereinafter provided in this Article. in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including court fees. attorneys' fees. filing fees. and any other expenses actually incurred by the Trustees in the course of the collection process.

Section 10. AUDITS AND THE COSTS THEREOF. The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Welfare Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees. attorney's fees, filing fees. audit costs. and any other expenses actually incurred by the Trustees in the course of action, without regard to whether the Employer did or did not owe delinquent contributions.

In the event an audit determines that there are no delinquent contributions due the Fund, other than in situations as noted in the above paragraph. the Fund shall pay the entire Audit Cost. In the event the audit determines that there are delinquent contributions due the Fund which were intentionally not paid by the Employer, the entire Audit Cost shall be assessed against the Employer. Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by the bank or other institution on which it is drawn and shall include non-payment due to lack of funds on the part of the Employer.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed a proportion of the audit costs, if any, based upon a formula which shall be set from time to time by the Trustees in their discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed.

Section 11. REFUND OF CONTRIBUTION. Upon application by the payer, the Fund may refund to the payer contribution it has paid to the Fund in error, being contributions which were not due and payable to this Fund in the first place, provided (a) application for a refund is made to the Fund office within sixty (60) months of the date the same were paid to the Fund, and (b) it is determined by the Fund that the previous receipt and acceptance of said contributions by the Fund has not and will not create any reasonable foreseeable liability on the part of the Fund.

22

IN WITNESS WHEREOF, the Associations or Employers and the Union, by their undersigned authorized representative have executed this instrument on the _____ day of _____, 2002.

EMPLOYER TRUSTEES                                            UNION TRUSTEES

                                        

31

# RESTATED AGREEMENT

# AND

# DECLARATION OF TRUST

# OF THE

# CENTRAL LABORERS'

# WELFARE FUND

November 19, 2024

# Table of Contents

ARTICLE I - DEFINITIONS ........................................................................................................... 3

ARTICLE II - CREATION OF WELFARE FUND................................................................... 10

ARTICLE III – TRUSTEES.......................................................................................................... 11

ARTICLE IV - POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES AND OTHER
PERSONS ...................................................................................................................................... 15

ARTICLE V - CLAIMS REVIEW PROCEDURE ...................................................................... 30

ARTICLE VI - CONTRIBUTIONS TO THE WELFARE FUND ............................................. 32

ARTICLE VII - PLAN OF BENEFITS......................................................................................... 42

ARTICLE VIII - MEETING AND DECISION OF TRUSTEES ................................................ 45

ARTICLE IX - AMENDMENT OF TRUST AGREEMENT....................................................... 48

ARTICLE X - TERMINATION OF TRUST ................................................................................ 49

ARTICLE XI - MISCELLANEOUS PROVISIONS ................................................................... 50

Signature Page ............................................................................................................................... 55

## ARTICLE I - DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement.

**Section 1. ADMINISTRATOR**. The Administrator of the Welfare Fund as that term is used in ERISA shall be the Trustees collectively.

**Section 2. ASSOCIATIONS**. The term "Association" shall mean Associated General Contractors of Illinois; Southern Illinois Builders Association; and Central Illinois Builders of AGC. Associations shall also include any other employer association whose participation in the Welfare Fund has been approved by the Board of Trustees; provided that such employer association enters into a collective bargaining agreement or other written agreement that provides for participation in the Welfare Fund; however, such other employer associations shall not have representation on the Board of Trustees.

**Section 3. AGREEMENT AND DECLARATION OF TRUST**. The term "Trust Agreement" shall mean this Agreement and Declaration of Trust, including any duly adopted amendments hereto and modifications hereof.

**Section 4. BENEFITS**. The term "benefits" shall mean payments, whether from the principal or income, or both, of the Welfare Fund for the benefit of eligible Employees, their families and beneficiaries, for Welfare on retirement or death of Employees.

**Section 5. CONTRIBUTIONS**. The term "Contributions" shall mean the monies paid to the Welfare Fund by Employers pursuant to applicable agreements as defined herein or as otherwise required hereby, which shall be held in trust for the purposes set forth herein.

**Section 6. EMPLOYEE**. The term "Employee," as used herein, shall mean any of the following persons without regard to race, sex, color,

3

creed, national origin, religion or union membership.

(a)  any person covered by a collective bargaining agreement between an Employer and the Union who is engaged in employment with respect to which the Employer is obligated by the collective bargaining agreement to make contributions to the Welfare Fund;

(b)  any person employed by an Employer who performs work within the jurisdiction of the Union as said jurisdiction is set forth in any applicable collective bargaining agreement or by any custom or practice in the geographic area within which the Employer operates and his Employees perform work;

(c)  any person on whose behalf an Employer has made contributions to the Welfare Fund and has reported same through the Welfare Fund's electronic remittance program or on a report form which contains a provision or acknowledgement binding said Employer to the provisions of this Trust Agreement or otherwise evidencing said Employer's intent to be so bound;

(d)  any person employed by an Employer who has signed any memorandum of understanding incorporating by reference the provisions of any applicable collective bargaining agreement and/or the provisions of this Trust Agreement;

(e)  any person who is not covered by a collective bargaining agreement but on whose behalf his Employer is otherwise obligated to make contributions to the Welfare Fund in accordance with the provisions of this Trust Agreement who performs work which would be work performed by members of a bargaining unit recognized by the Employer or certified by the National Labor Relations Board if said person's Employer were a party to any of the standard collective

4

bargaining agreements by and between the Union and any of the Associations defined herein; PROVIDED, HOWEVER, that to the extent that this definition includes any person who meets the definition or concept of a "non-bargaining unit employee" and/or who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401(a) of the Internal Revenue Code, the Employee and his Employer must meet all applicable strictures and tests set forth in said Section 401(a) of the Internal Revenue Code; or

(f)    any Employee in a certified or recognized collective bargaining unit represented by the Union.

The term "Employee" shall also mean all eligible persons employed by the Union, on whose behalf the Union shall make payments to the Welfare Fund at the times and at the rate of payment specified in a Written Agreement.

The term "Employee" shall also mean all eligible persons employed by the Central Laborers' Pension Fund ("Pension Fund") on whose behalf the Pension Fund shall make payments to the Welfare Fund, out of the Pension Fund at the times and at the rate of payment specified in a Written Agreement.

**Section 7.  EMPLOYER**. The term "Employer" as used herein shall mean any Employer who:

(a)    now or hereafter is a party to a collective bargaining agreement with the Union, requiring periodic contributions to the Welfare Fund created by this Trust Agreement or who in the past has been a party to such a collective bargaining agreement, if such agreement has not been terminated by its terms or by operation of law;

(b)    is a party to any memorandum of understanding or

5

memorandum of agreement or similar instrument with the Union, which by its terms incorporates by reference a complete collective bargaining agreement which requires the parties thereto to make contributions to the Welfare Fund;

(c)     in writing adopts and agrees to be bound by the terms and provisions of this Agreement as the same may be amended or modified from time to time through a Written Agreement; PROVIDED, HOWEVER, that to the extent that this definition includes any entity or person who meets the definition or concept of a "non-bargaining unit employer," and/or who employs a person who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401(a) of the Internal Revenue Code, the Employee and his Employer must meet all applicable strictures and tests set forth in said Section 401(a) of the Internal Revenue Code; PROVIDED FURTHER, that all non-bargaining unit employers must be in compliance with the Welfare Fund's Non-Bargaining Unit Policy and Procedures, as amended from time to time;

(d)     is a party to a Written Agreement, including but not limited to, a contribution report form listing the Employees on whose behalf contributions are remitted and provisions expressly binding such Employer to this Trust Agreement or otherwise evidencing such Employer's intention to be so bound by the making of such contributions;

(e)     by any course of conduct, including but not limited to, oral representations to Employees, representatives of the Union, Trustees, attorneys or other persons, ratifies or accepts the provisions of any collective bargaining agreement which requires contributions to the Welfare Fund created hereby or of this Trust Agreement itself, or of any Written Agreement which binds such Employer to make contributions to the

6

Welfare Fund, or is estopped to deny such obligation;

(f)     is a member of any of the Associations, or hereafter becomes a member of any of said Associations, named herein or who was a member at any time when representatives of said Associations commenced negotiations of the current collective bargaining agreement on behalf of its members whether or not said membership is held current at all times; or

(g)     is a member of any other multi-employer bargaining unit, or hereafter becomes a member of any of said multi-employer bargaining units, which has a collective bargaining agreement with the Union, whether formalized or existing solely as a matter of custom and practice.

The term "Employer," shall also mean the Union, for the purpose of providing benefits hereunder for the eligible Employees of the Union for whom the Union is obligated to contribute to the Welfare Fund. The terms of the Union's participation shall be memorialized in a Written Agreement.

The term "Employer" shall also mean the Central Laborers' Pension Fund ("Pension Fund") for the purpose of providing benefits hereunder for the eligible Employees of the Pension Fund for whom the Pension Fund shall make contributions in accordance with the Plan as said term is hereinafter defined. The terms of the Pension Fund's participation shall be memorialized in a Written Agreement.

**Section 8. ERISA**. The term "ERISA" as used herein shall mean the Employee Retirement Income Security Act of 1974, any amendments thereto and any regulations promulgated thereunder.

**Section 9. WELFARE FUND**. The term "Welfare Fund" as used herein shall mean the entire trust estate created pursuant to this Agreement as it may, from time to time, be constituted, including, but not limited to

7

all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds, and other sums payable to the Welfare Fund on account of such contracts), all investments made and held by the Welfare Fund, all income increments, earnings and profits therefrom, and any and all other property or funds received by the Welfare Fund by reason of the Trustees' acceptance of this Trust Agreement for the uses and purposes set forth herein.

**Section 10. PLAN**. The term "Plan" shall mean the program of Welfare Benefits to be established by the Trustees pursuant to this Agreement and Declaration of Trust, provided, however, that such program shall be consistent with all applicable laws and regulations including, but not limited to ERISA.

## Section 11. TRUSTEES.

(a) The term "Employer Trustees" shall mean the Trustees appointed by the Associations as herein provided, and such Trustees shall represent all Employers as defined herein. All employers bound to this Agreement ratify and confirm the appointment with the Employer Trustees and their successors.

(b) The term "Union Trustees" shall mean the Trustees appointed by the District Councils of the Laborers' International Union of North America as hereinafter provided who shall represent all Employees as defined herein and their families and beneficiaries, as appropriate, according to the provisions of the Plan.

(c) The term "Trustees" shall mean the Employer Trustees and Union Trustees collectively who shall have such powers, duties and obligations as set forth in Article IV hereof. All Trustees are hereby designated "named fiduciaries" of the Welfare Fund.

8

**Section 12. UNION**. The term "Union" shall mean such representative of the Laborers' International Union of North America and its District Councils that may enter into collective bargaining agreements or Written Agreements requiring contributions to this Welfare Fund. Union shall also include any other labor organization whose participation in the Welfare Fund has been approved by the Board of Trustees; provided that such labor organization enters into a collective bargaining agreement or other written agreement that provides for participation in the Welfare Fund; however, such other labor organizations shall not have representation on the Board of Trustees.

**Section 13. WRITTEN AGREEMENT**. The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to the Welfare Fund together with any modification, amendment or renewals thereof, including but not limited to, collective bargaining agreements, memoranda of understanding which incorporate by reference collective bargaining agreements or this Trust Agreement, participation agreements, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Trust Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Trust Agreement and/or the Plan established pursuant hereto.

9

## ARTICLE VI - CONTRIBUTIONS TO THE WELFARE FUND

**Section 1. BASIS OF CONTRIBUTIONS TO PLAN**. In order to effectuate the purpose hereof, each Employer shall contribute to the Welfare Fund the amount required by any Written Agreement as defined herein between the Union or the Welfare Fund and the Employer. The rate of contributions shall at all times be governed by the applicable Written Agreement then in force and effect, together with any amendments, supplements, addenda or modifications thereto provided, however, in the case of an Employer who is required to make contributions pursuant to a Written Agreement other than a collective bargaining agreement, the amount of contribution required shall be identical to the amount required by the collective bargaining agreement in effect between the Association and the Local Union having jurisdiction over the geographical area in which the Employees perform work unless the Written Agreement specifies otherwise. It shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable collective bargaining agreement or other Written Agreement. With respect to the amount of contributions required thereby, no Employee shall be permitted to contract or otherwise agree with or permit an Employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 2. EFFECTIVE DATE OF CONTRIBUTIONS.** All contributions shall be made effective as required by the applicable Written Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to said Written Agreement.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.** The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of all its employees, their

32

social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Welfare Fund and Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees ("Fund Representative") of all records of the Employer as described in Section 4 of Article VI, in connection with the Employer's obligations to report and pay contributions to the Welfare Fund. An Employer's records shall be made available to the Fund Representative at the Employer's place of business at all reasonable times for examination, inspection and copying (at the Employer's expense) for purposes of an audit. In addition, all records as described in Section 4 of Article VI of any affiliate, subsidiary, alter ego, joint venture, successor or related company (including, where applicable, payroll companies) of the Employer shall also be made available to the Fund Representative upon request at all reasonable times for examination, inspection and copying (at the Employer's expense) for purposes of an audit.

All Employers shall be required to maintain records in compliance with Section 209(a)(1) of ERISA and in compliance with all procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Welfare Fund commencing with such Employer's participation unless given written authorization for variance by the Administrator. All such records shall be maintained for a period of at least ten (10) years unless earlier destruction of the same is authorized in writing by the Trustees. The Trustees shall require each Employer to designate the classification of all of its employees and if Employer fails to do so, after being requested to do so by the Trustees, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.

Where an audit discloses a difference between hours actually worked by an Employee and hours reported to the Welfare Fund by his Employer and where such audit or an investigation discloses any willful violation of any of the requirements of this Trust Agreement or rules and regulations adopted in connection herewith, the owners, officers,

33

directors, or members of such Employer, if a corporation or other incorporated business entity, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment of contributions or other pecuniary or financial loss to the Welfare Fund as a result of such conduct. Owners and partners, who are not otherwise incorporated, shall also be personally liable for any underpayments and financial losses to the Welfare Fund due to their willful violations as described herein.

Section 4. DUTY TO COOPERATE. All Trustees, directors, officers, Employers, Employees, participants or other representatives of any Association or Union party to this Trust Agreement shall be required to assist and cooperate fully with authorized representatives of the Welfare Fund, its attorneys, auditors, and other authorized representatives in the prosecution of claims for or against the Welfare Fund.

Specifically, an Employer shall provide to the Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the following information for examination, inspection and copying:

(a)  All cash disbursements journals, general ledgers, or other documents, including check registers or canceled checks if necessary, showing cash disbursements;

(b)  All individual payroll records including certified payrolls where required on particular projects, and quarterly and annual payroll tax returns, including any applicable W-2's/W-3's/1099's;

(c)  All individual time and earning records which are the basis of the above-mentioned payroll records;

(d)  All state and federal unemployment tax returns;

34

(e)    All union or fringe benefit fund reports and proof of payments showing contributions paid to all entities or employees for fringe benefits and dues;

(f)    All other relevant records which would tend to show the Employer's compliance with the terms of the Trust Agreement, including, if requested, copies of contracts, subcontracts, records of project names and locations, job cost records and records showing hours worked by employees on particular projects; and

(g)    All records and documents listed above in subsection (a) through (f) from partnerships, proprietorships, corporations, or other entities under common control with the Employer as defined in 26 U.S.C. 414(c) and related regulations.

Further, in the event no time records or records of hours worked are available which indicate whether such hours are straight time or overtime, all hours paid shall be deemed to have been paid at straight time for the purpose of computing contributions owed.

**Section 5.  BOND OR DEPOSIT.** The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount in cash equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. An Employer may request the return of any cash deposit after twelve-months following the cash deposit, but any cash deposit will only be returned after the Trustees have determined the Employer has complied with the requirements of this Trust Agreement during a twelve-month consecutive period following the cash deposit.  At the option of the Trustees, and upon terms and conditions agreeable to the Trustees, the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), nor more than Twenty-Five Thousand Dollars ($25,000.00) or an amount equal to three (3) times the

35

monthly contributions of such Employer, as estimated by the Trustees, whichever is greater, secured by a corporate surety, line of credit, or cash bond.

Any such bond must be for a duration of at least twelve (12) months. If an Employer fails and/or refuses to provide the cash deposit or bond as required by the Trustees pursuant to the terms of this Section 5 of Article VI, then the Trustees are authorized and empowered to seek an order in a court of competent jurisdiction to compel the Employer to provide such cash deposit or bond. The Employer shall be liable for all reasonable attorneys' fees and costs incurred in the process to obtain an order to compel a cash deposit or bond.

**Section 6. CONTRIBUTON DUE DATE.** All contributions shall be due and payable on the fifteenth (15th) day of the month next following the calendar month in which Employees perform work with respect to which contributions are required.

**Section 7. DEFAULT IN PAYMENT.** An Employer shall be considered to be delinquent in the payment of contributions if Employer (a) fails to submit a contribution reporting form and pay contributions that are owed by the contribution due date specified in Section 6 of this Article VI, (b) fails to pay contributions on behalf of all Employees, (c) fails to properly compute the contributions that are due for all Employees, or (d) fails to pay liquidated damages, interest, costs or any other charges assessed and/or imposed by the Trustees. The Trustees may take any action necessary to enforce payment of the contributions, liquidated damages, interest, and other amounts due hereunder, including, but not limited to, proceedings at law and in equity.

**Section 8. LIQUIDATED DAMAGES.** It is recognized and acknowledged by all parties, including all Employers, that the prompt and accurate payment of contributions is essential to the maintenance and administration of the Welfare Fund and the Plan and it would be extremely difficult if not impracticable to calculate the actual expense and damage

36

to the Welfare Fund which would result from the failure of an Employer to timely and accurately pay contributions required hereunder.  As a result, any Employer not paying contributions within fifteen (15) days from the date they are originally due, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or Twenty-Five Dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer that is a party to or otherwise bound by this Trust Agreement acknowledges that the liquidated damages will be used and are necessary to defer administrative costs arising from the failure to timely and accurately pay contributions to the Welfare Fund, and each Employer acknowledges these administrative costs to be minimally ten percent (10%) of the delinquent contributions or Twenty-Five Dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

**Section 9. INTEREST.** Delinquent contributions shall bear interest at such rate as may have been established by the Trustees.  The Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest.  The Trustees shall have the authority to waive the foregoing interest charge consistent with their fiduciary obligations and Prohibited Transaction Exemption 76-1.

**Section 10.  COLLECTION COSTS.** Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions as provided in Section 7 of this Article IV, said Employer shall be liable for all reasonable costs incurred in the collection process including court fees, attorneys' fees, accounting/audit costs, filing fees, and any other expenses actually incurred by the Trustees in the course of the collection process.

**Section 11. AUDITS AND ASSOCIATED COSTS.** The Trustees shall have the authority to examine, inspect, copy and audit the records of any Employer as described in Sections 3 and 4 of this Article VI, at the

37

Employer's place of business or other location as deemed advisable by the Trustees in their sole discretion, for the purposes of determining the accuracy of an Employer's reporting and payment of contributions to the Welfare Fund and/or as they may otherwise deem necessary in the administration of the Welfare Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, accounting/audit cost, and any other expenses actually incurred by the Trustees in the course of the action, without regard to whether the Employer did or did not owe delinquent contributions.

In the event an audit determines there are no delinquent contributions due the Welfare Fund, other than in situations as noted in the above paragraph, the entire costs of the audit incurred by the Welfare Fund shall be paid by the Welfare Fund. In the event the audit determines that there are delinquent contributions due the Welfare Fund which were intentionally not paid by the Employer, the entire costs of the audit incurred by the Welfare Fund shall be assessed against and paid by the Employer. Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by a bank or other institution on which it is drawn and shall include non-payment due to lack of funds on the part of the Employer. The Employer shall bear all of its own costs of the audit.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed and pay a proportion of the audit costs incurred by the Welfare Fund, if any, based upon a formula which shall be set from time to time by the Trustees in their discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed.

**Section 12. REFUND OF CONTRIBUTIONS**. Upon application by an Employer, the Welfare Fund may refund to the Employer contributions it has paid to the Welfare Fund based on a mistake of fact

38

## <u>Signature Page</u>

IN WITNESS WHEREOF, the Associations or Employers and the Union, by their undersigned authorized representatives have executed this instrument on the 19th day of November, 2024.



CHAIRMAN                                    SECRETARY

55

**RESTATED AGREEMENT**

**AND**

**DECLARATION OF TRUST**

**OF THE**

**CENTRAL LABORERS'**

**ANNUITY FUND**

July 17, 2023

## Table of Contents

ARTICLE I - DEFINITIONS.................................................................................................... 2

ARTICLE II - CREATION OF ANNUITY FUND.................................................................. 9

ARTICLE III – TRUSTEES..................................................................................................... 11

ARTICLE IV - POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES AND OTHER
PERSONS.................................................................................................................................. 15

ARTICLE V - CLAIMS REVIEW PROCEDURE................................................................. 30

ARTICLE VI - CONTRIBUTIONS TO THE ANNUITY FUND.......................................... 31

ARTICLE VII - PLAN OF BENEFITS.................................................................................... 41

ARTICLE VIII - MEETING AND DECISION OF TRUSTEES........................................... 43

ARTICLE IX - AMENDMENT OF TRUST AGREEMENT ................................................ 45

ARTICLE X - TERMINATION OF TRUST........................................................................... 46

ARTICLE XI - MISCELLANEOUS PROVISIONS .............................................................. 47

Signature Page......................................................................................................................... 50

# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE CENTRAL LABORERS' ANNUITY FUND

**(Incorporating Amendments through July 17, 2023)**

**WHEREAS,** effective the 24th day of February, 1981, certain District Councils/Local Unions affiliated with Laborers' International Union of North America and certain Employer Associations that sponsored the Central Laborers' Pension Fund created the Central Laborers' Annuity Fund ("Annuity Fund");

**WHEREAS,** the Annuity Fund was created as a separate entity from the Central Laborers' Pension Fund and all of the Annuity Fund's monies, income, expenses, and records have been kept and held separate and apart from the Central Laborers' Pension Fund;

**WHEREAS,** the Annuity Fund has been governed by the Central Laborers' Pension Fund's Trust Agreement and addendum/resolution affixed to the Pension Fund's Trust Agreement since its creation;

**WHEREAS,** the Board of Trustees of the Annuity Fund seeks to create a separate written Trust Agreement exclusively for the Annuity Fund and restate the terms and conditions under which the said Annuity Fund is to be established and administered;

**WHEREAS,** under Article IX, Section 1, of the Annuity Fund's original Agreement and Declaration of Trust, which was combined with the Central Laborers' Pension Fund, the Annuity Fund's Trustees have the power and authority to amend and restate such Agreement and Declaration of Trust from time to time as therein provided; and

**NOW, THEREFORE,** for and in consideration of the premises and mutual covenants and agreements herein contained, IT IS HEREBY AGREED AS FOLLOWS:

1

## ARTICLE I - DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement.

**Section 1. ADMINISTRATOR**. The Administrator of the Annuity Fund as that term is used in ERISA shall be the Trustees collectively.

**Section 2. ASSOCIATIONS**. The term "Association" shall mean Associated General Contractors of Illinois; Southern Illinois Builders Association; Central Illinois Builders of AGC; and Illinois Valley Contractors Association. Associations shall also include any other employer association whose participation in the Annuity Fund has been approved by the Board of Trustees; provided that such employer association enters into a collective bargaining agreement or other written agreement that provides for participation in the Annuity Fund; however, such other employer associations shall not have representation on the Board of Trustees.

**Section 3. AGREEMENT AND DECLARATION OF TRUST**. The term " Trust Agreement" shall mean this Agreement and Declaration of Trust, including any duly adopted amendments hereto and modifications hereof.

**Section 4. BENEFITS**. The term "benefits" shall mean defined contribution retirement benefits from the Annuity Fund for the benefit of eligible Employees and their beneficiaries.

**Section 5. CONTRIBUTIONS**. The term "Contributions" shall mean the monies paid to the Annuity Fund by Employers pursuant to applicable agreements as defined herein or as otherwise required hereby, which shall be held in trust for the purposes set forth herein. Contributions shall also include wage deferrals or contributions from Employees if specified in a Written Agreement.

The Annuity Fund may also accept rollovers from eligible defined contribution plans, certain Individual Retirement Accounts and other qualified plans on behalf of Employees to the extent permitted by the Internal Revenue Code.

**Section 6. EMPLOYEE**. The term "Employee," as used herein, shall mean any of the following persons without regard to race, sex, color, creed, national origin, religion or union membership.

(a) any person covered by a collective bargaining agreement between an Employer and the Union who is engaged in employment with respect to which the Employer is obligated by the collective bargaining agreement to make contributions to the Annuity Fund;

(b) any person employed by an Employer who performs work within the jurisdiction of the Union as said jurisdiction is set forth in any applicable collective bargaining agreement or by any custom or practice in the geographic area within which the Employer operates and his Employees perform work;

(c) any person on whose behalf an Employer has made contributions to the Annuity Fund and has reported same through the Annuity Fund's electronic remittance program or on a report form which contains a provision or acknowledgement binding said Employer to the provisions of this Trust Agreement or otherwise evidencing said Employer's intent to be so bound;

(d) any person employed by an Employer who has signed any memorandum of understanding incorporating by reference the provisions of any applicable collective bargaining agreement and/or the provisions of this Trust Agreement;

(e) any person who is not covered by a collective bargaining

3

agreement but on whose behalf his Employer is otherwise obligated to make contributions to the Annuity Fund in accordance with the provisions of this Trust Agreement who performs work which would be work performed by members of a bargaining unit recognized by the Employer or certified by the National Labor Relations Board if said person's Employer were a party to any of the standard collective bargaining agreements by and between the Union and any of the Associations defined herein; PROVIDED, HOWEVER, that to the extent that this definition includes any person who meets the definition or concept of a "non-bargaining unit employee" and/or who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401(a) of the Internal Revenue Code, the Employee and his Employer must meet all applicable strictures and tests set forth in said Section 401(a) of the Internal Revenue Code; or

(f)    any Employee in a certified or recognized collective bargaining unit represented by the Union.

The term "Employee" shall also mean all eligible persons employed by the Union, on whose behalf the Union shall make payments to the Annuity Fund at the times and at the rate of payment specified in a Written Agreement.

The term "Employee" shall also mean all eligible persons employed by the Central Laborers' Pension Fund ("Pension Fund") on whose behalf the Pension Fund shall make payments to the Annuity Fund, out of the Pension Fund at the times and at the rate of payment specified in a Written Agreement.

The term "Employee" also includes all eligible persons employed by an Employer who contribute to the Annuity Fund through a wage deferral or employee contributions; provided that the terms of the wage deferral or employee contribution are specified in a Written Agreement.

4

**Section 7. EMPLOYER**. The term "Employer" as used herein shall mean any Employer who:

(a)  now or hereafter is a party to a collective bargaining agreement with the Union, requiring periodic contributions to the Annuity Fund created by this Trust Agreement or who in the past has been a party to such a collective bargaining agreement, if such agreement has not been terminated by its terms or by operation of law;

(b)  is a party to any memorandum of understanding or memorandum of agreement or similar instrument with the Union, which by its terms incorporates by reference a complete collective bargaining agreement which requires the parties thereto to make contributions to the Annuity Fund;

(c)  in writing adopts and agrees to be bound by the terms and provisions of this Agreement as the same may be amended or modified from time to time through a Written Agreement; PROVIDED, HOWEVER, that to the extent that this definition includes any entity or person who meets the definition or concept of a "non-bargaining unit employer," and/or who employs a person who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401(a) of the Internal Revenue Code, the Employee and his Employer must meet all applicable strictures and tests set forth in said Section 401(a) of the Internal Revenue Code; PROVIDED FURTHER, that all non-bargaining unit employers must be in compliance with the Annuity Fund's Non-Bargaining Unit Policy and Procedures, as amended from time to time;

(d)  is a party to a Written Agreement, including but not limited to, a contribution report form listing the Employees on whose

5

behalf contributions are remitted and provisions expressly binding such Employer to this Trust Agreement or otherwise evidencing such Employer's intention to be so bound by the making of such contributions;

(e)    by any course of conduct, including but not limited to, oral representations to Employees, representatives of the Union, Trustees, attorneys or other persons, ratifies or accepts the provisions of any collective bargaining agreement which requires contributions to the Annuity Fund created hereby or of this Trust Agreement itself, or of any Written Agreement which binds such Employer to make contributions to the Annuity Fund, or is estopped to deny such obligation;

(f)    is a member of any of the Associations, or hereafter becomes a member of any of said Associations, named herein or who was a member at any time when representatives of said Associations commenced negotiations of the current collective bargaining agreement on behalf of its members whether or not said membership is held current at all times; or

(g)    is a member of any other multi-employer bargaining unit, or hereafter becomes a member of any of said multi-employer bargaining units, which has a collective bargaining agreement with the Union, whether formalized or existing solely as a matter of custom and practice.

The term "Employer," shall also mean the Union, for the purpose of providing benefits hereunder for the eligible Employees of the Union for whom the Union is obligated to contribute to the Annuity Fund. The terms of the Union's participation shall be memorialized in a Written Agreement.

The term "Employer" shall also mean the Pension Fund for the purpose of providing benefits hereunder for the eligible Employees of the

6

Pension Fund for whom the Pension Fund shall make contributions in accordance with the Plan as said term is hereinafter defined. The terms of the Pension Fund's participation in the Annuity Fund shall be memorialized in a Written Agreement.

The term "Employer" also includes employers who enter into a Written Agreement with the Annuity Fund that permits its Employees to contribute to the Annuity Fund through wage deferrals or employee contributions.

**Section 8. ERISA.** The term "ERISA" as used herein shall mean the Employee Retirement Income Security Act of 1974, any amendments thereto and any regulations promulgated thereunder.

**Section 9. ANNUITY FUND.** The term "Annuity Fund" as used herein shall mean the entire trust estate created pursuant to this Agreement as it may, from time to time, be constituted, including, but not limited to all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds, and other sums payable to the Annuity Fund on account of such contracts), all investments made and held by the Annuity Fund, all income increments, earnings and profits therefrom, and any and all other property or funds received by the Annuity Fund by reason of the Trustees' acceptance of this Trust Agreement for the uses and purposes set forth herein.

**Section 10. PLAN.** The term "Plan" shall mean the program of defined contribution retirement benefits to be established by the Trustees pursuant to this Trust Agreement, provided, however, that such program shall be consistent with all applicable laws and regulations including, but not limited to ERISA.

**Section 11. TRUSTEES.**

(a)    The term "Employer Trustees" shall mean the Trustees appointed by the Associations as herein provided, and such

7

Trustees shall represent all Employers as defined herein. All employers bound to this Agreement ratify and confirm the appointment with the Employer Trustees and their successors.

(b)    The term "Union Trustees" shall mean the Trustees appointed by the District Councils of the Laborers' International Union of North America as hereinafter provided who shall represent all Employees as defined herein and their families and beneficiaries, as appropriate, according to the provisions of the Plan.

(c)    The term "Trustees" shall mean the Employer Trustees and Union Trustees collectively who shall have such powers, duties and obligations as set forth in Article III hereof. All Trustees are hereby designated "named fiduciaries" of the Annuity Fund.

**Section 12. UNION**. The term "Union" shall mean such representative of the Laborers' International Union of North America and its District Councils that may enter into collective bargaining agreements or Written Agreements requiring contributions to this Annuity Fund. Union shall also include any other labor organization whose participation in the Annuity Fund has been approved by the Board of Trustees; provided that such labor organization enters into a collective bargaining agreement or other written agreement that provides for participation in the Annuity Fund; however, such other labor organizations shall not have representation on the Board of Trustees.

**Section 13. WRITTEN AGREEMENT**. The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to the Annuity Fund together with any modification, amendment or renewals thereof, including but not limited to, collective bargaining agreements, memoranda of understanding which incorporate by reference collective

8

bargaining agreements or this Trust Agreement, participation agreements, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Trust Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Trust Agreement and/or the Plan established pursuant hereto.

**[The remainder of this page is intentionally left blank]**

9

## ARTICLE VI - CONTRIBUTIONS TO THE ANNUITY FUND

**Section 1. BASIS OF CONTRIBUTIONS TO PLAN**. In order to effectuate the purpose hereof, each Employer shall contribute to the Annuity Fund the amount required by any Written Agreement as defined herein between the Union or the Annuity Fund and the Employer. The rate of contributions shall at all times be governed by the applicable Written Agreement then in force and effect, together with any amendments, supplements, addenda or modifications thereto provided, however, in the case of an Employer who is required to make contributions pursuant to a Written Agreement other than a collective bargaining agreement, the amount of contribution required shall be identical to the amount required by the collective bargaining agreement in effect between the Association and the Local Union having jurisdiction over the geographical area in which the Employees perform work unless the Written Agreement specifies otherwise. It shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable collective bargaining agreement or other Written Agreement. With respect to the amount of contributions required thereby, no Employee shall be permitted to contract or otherwise agree with or permit an Employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 2. EFFECTIVE DATE OF CONTRIBUTIONS**. All contributions shall be made effective as required by the applicable Written Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to said Written Agreement.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS**. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of all its employees, their

31

social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Annuity Fund and Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees ("Fund Representative") of all records of the Employer as described in Section 4 of Article VI, in connection with the Employer's obligations to report and pay contributions to the Annuity Fund. An Employer's records shall be made available to the Fund Representative at the Employer's place of business at all reasonable times for examination, inspection and copying (at the Employer's expense) for purposes of an audit. In addition, all records as described in Section 4 of Article VI of any affiliate, subsidiary, alter ego, joint venture, successor or related company (including, where applicable, payroll companies) of the Employer shall also be made available to the Fund Representative upon request at all reasonable times for examination, inspection and copying (at the Employer's expense) for purposes of an audit.

All Employers shall be required to maintain records in compliance with Section 209(a)(1) of ERISA and in compliance with all procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Annuity Fund commencing with such Employer's participation unless given written authorization for variance by the Administrator. All such records shall be maintained for a period of at least ten (10) years unless earlier destruction of the same is authorized in writing by the Trustees. The Trustees shall require each Employer to designate the classification of all of its employees and if Employer fails to do so, after being requested to do so by the Trustees, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.

Where an audit discloses a difference between hours actually worked by an Employee and hours reported to the Annuity Fund by his Employer and where such audit or an investigation discloses any willful violation of any of the requirements of this Trust Agreement or rules and

regulations adopted in connection herewith, the owners, officers, directors, or members of such Employer, if a corporation or other incorporated business entity, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment of contributions or other pecuniary or financial loss to the Annuity Fund as a result of such conduct. Owners and partners, who are not otherwise incorporated, shall also be personally liable for any underpayments and financial losses to the Annuity Fund due to their willful violations as described herein.

**Section 4. DUTY TO COOPERATE**. All Trustees, directors, officers, Employers, Employees, participants or other representatives of any Association or Union party to this Trust Agreement shall be required to assist and cooperate fully with authorized representatives of the Annuity Fund, its attorneys, auditors, and other authorized representatives in the prosecution of claims for or against the Annuity Fund.

Specifically, an Employer shall provide to the Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the following information for examination, inspection and copying:

(a) All cash disbursements journals, general ledgers, or other documents, including check registers or canceled checks if necessary, showing cash disbursements;

(b) All individual payroll records including certified payrolls where required on particular projects, and quarterly and annual payroll tax returns, including any applicable W-2's/W-3's/1099's;

(c) All individual time and earning records which are the basis of the above-mentioned payroll records;

(d) All state and federal unemployment tax returns;

33

(e)    All union or fringe benefit fund reports and proof of payments showing contributions paid to all entities or employees for fringe benefits and dues;

(f)    All other relevant records which would tend to show the Employer's compliance with the terms of the Trust Agreement, including, if requested, copies of contracts, subcontracts, records of project names and locations, job cost records and records showing hours worked by employees on particular projects; and

(g)    All records and documents listed above in subsection (a) through (f) from partnerships, proprietorships, corporations, or other entities under common control with the Employer as defined in 26 U.S.C. 414(c) and related regulations.

Further, in the event no time records or records of hours worked are available which indicate whether such hours are straight time or overtime, all hours paid shall be deemed to have been paid at straight time for the purpose of computing contributions owed.

**Section 5.  BOND OR DEPOSIT**. The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount in cash equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. An Employer may request the return of any cash deposit after twelve-months following the cash deposit, but any cash deposit will only be returned after the Trustees have determined the Employer has complied with the requirements of this Trust Agreement during a twelve-month consecutive period following the cash deposit.  At the option of the Trustees, and upon terms and conditions agreeable to the Trustees, the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), nor more than Twenty-Five

34

Thousand Dollars ($25,000.00) or an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees, whichever is greater, secured by a corporate surety, line of credit, or cash bond.

Any such bond must be for a duration of at least twelve (12) months. If an Employer fails and/or refuses to provide the cash deposit or bond as required by the Trustees pursuant to the terms of this Section 5 of Article VI, then the Trustees are authorized and empowered to seek an order in a court of competent jurisdiction to compel the Employer to provide such cash deposit or bond. The Employer shall be liable for all reasonable attorneys' fees and costs incurred in the process to obtain an order to compel a cash deposit or bond.

**Section 6. CONTRIBUTON DUE DATE.** All contributions shall be due and payable on the fifteenth (15th) day of the month next following the calendar month in which Employees perform work with respect to which contributions are required.

**Section 7. DEFAULT IN PAYMENT**. An Employer shall be considered to be delinquent in the payment of contributions if Employer (a) fails to submit a contribution reporting form and pay contributions that are owed by the contribution due date specified in Section 6 of this Article VI, (b) fails to pay contributions on behalf of all Employees, (c) fails to properly compute the contributions that are due for all Employees, or (d) fails to pay liquidated damages, interest, costs or any other charges assessed and/or imposed by the Trustees. The Trustees may take any action necessary to enforce payment of the contributions, liquidated damages, interest, and other amounts due hereunder, including, but not limited to, proceedings at law and in equity.

**Section 8. LIQUIDATED DAMAGES.** It is recognized and acknowledged by all parties, including all Employers, that the prompt and accurate payment of contributions is essential to the maintenance and administration of the Annuity Fund and the Plan and it would be

35

extremely difficult if not impracticable to calculate the actual expense and damage to the Annuity Fund which would result from the failure of an Employer to timely and accurately pay contributions required hereunder. As a result, any Employer not paying contributions within fifteen (15) days from the date they are originally due, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or Twenty-Five Dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer that is a party to or otherwise bound by this Trust Agreement acknowledges that the liquidated damages will be used and are necessary to defer administrative costs arising from the failure to timely and accurately pay contributions to the Annuity Fund, and each Employer acknowledges these administrative costs to be minimally ten percent (10%) of the delinquent contributions or Twenty-Five Dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

**Section 9. INTEREST.** Delinquent contributions shall bear interest at such rate as may have been established by the Trustees. The Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest. The Trustees shall have the authority to waive the foregoing interest charge consistent with their fiduciary obligations and Prohibited Transaction Exemption 76-1.

**Section 10. COLLECTION COSTS.** Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions as provided in Section 7 of this Article IV, said Employer shall be liable for all reasonable costs incurred in the collection process including court fees, attorneys' fees, accounting/audit costs, filing fees, and any other expenses actually incurred by the Trustees in the course of the collection process.

**Section 11. AUDITS AND ASSOCIATED COSTS.** The Trustees shall have the authority to examine, inspect, copy and audit the records of

36

any Employer as described in Sections 3 and 4 of this Article VI, at the Employer's place of business or other location as deemed advisable by the Trustees in their sole discretion, for the purposes of determining the accuracy of an Employer's reporting and payment of contributions to the Annuity Fund and/or as they may otherwise deem necessary in the administration of the Annuity Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, accounting/audit cost, and any other expenses actually incurred by the Trustees in the course of the action, without regard to whether the Employer did or did not owe delinquent contributions.

In the event an audit determines there are no delinquent contributions due the Annuity Fund, other than in situations as noted in the above paragraph, the entire costs of the audit incurred by the Annuity Fund shall be paid by the Annuity Fund. In the event the audit determines that there are delinquent contributions due the Annuity Fund which were intentionally not paid by the Employer, the entire costs of the audit incurred by the Annuity Fund shall be assessed against and paid by the Employer. Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by a bank or other institution on which it is drawn and shall include non-payment due to lack of funds on the part of the Employer.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed and pay a proportion of the audit costs incurred by the Annuity Fund, if any, based upon a formula which shall be set from time to time by the Trustees in their discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed. The Employer shall bear all of its own costs of the audit.

**Section 12. REFUND OF CONTRIBUTIONS**. Upon application by an Employer, the Annuity Fund may refund to the Employer

## <u>Signature Page</u>

IN WITNESS WHEREOF, the Associations or Employers and the Union, by their undersigned authorized representatives have executed this instrument on the 17th day of July, 2023.

CHAIRMAN                                    SECRETARY



50

# RESTATED AGREEMENT

# AND

# DECLARATION OF TRUST

# OF THE

# CENTRAL LABORERS'

# PENSION FUND

July 17, 2023

# Table of Contents

*ARTICLE I - DEFINITIONS* ............................................................................................. *4*

*ARTICLE II - CREATION OF PENSION FUND* ....................................................... *11*

*ARTICLE III – TRUSTEES* ............................................................................................ *12*

*ARTICLE IV - POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES AND OTHER PERSONS* ....................................................................................................................... *17*

*ARTICLE V - CLAIMS REVIEW PROCEDURE* ....................................................... *32*

*ARTICLE VI - CONTRIBUTIONS TO THE PENSION FUND* ................................. *33*

*ARTICLE VII - PLAN OF BENEFITS* ........................................................................ *44*

*ARTICLE VIII - MEETING AND DECISION OF TRUSTEES* ................................. *46*

*ARTICLE IX - AMENDMENT OF TRUST AGREEMENT* ........................................ *48*

*ARTICLE X - TERMINATION OF TRUST* ................................................................ *49*

*ARTICLE XI - MISCELLANEOUS PROVISIONS* .................................................... *51*

*Signature Page* ............................................................................................................... *54*

i

## ARTICLE I - DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement.

**Section 1. ADMINISTRATOR**. The Administrator of the Pension Fund as that term is used in ERISA shall be the Trustees collectively.

**Section 2. ASSOCIATIONS**. The term "Association" shall mean Associated General Contractors of Illinois; Southern Illinois Builders Association; Central Illinois Builders of AGC; and Illinois Valley Contractors Association. Associations shall also include any other employer association whose participation in the Pension Fund has been approved by the Board of Trustees; provided that such employer association enters into a collective bargaining agreement or other written agreement that provides for participation in the Pension Fund; however, such other employer associations shall not have representation on the Board of Trustees.

**Section 3. AGREEMENT AND DECLARATION OF TRUST**. The term "Trust Agreement" shall mean this Agreement and Declaration of Trust, including any duly adopted amendments hereto and modifications hereof.

**Section 4. BENEFITS**. The term "benefits" shall mean payments, whether from the principal or income, or both, of the Pension Fund for the benefit of eligible Employees, their families and beneficiaries, for pensions on retirement or death of Employees.

**Section 5. CONTRIBUTIONS**. The term "Contributions" shall mean the monies paid to the Pension Fund by Employers pursuant to applicable agreements as defined herein or as otherwise required hereby, which shall be held in trust for the purposes set forth herein and in no event shall the Pension Fund accept wage deferrals or contributions from

4

Employees.

**Section 6. EMPLOYEE**. The term "Employee," as used herein, shall mean any of the following persons without regard to race, sex, color, creed, national origin, religion or union membership.

(a)    any person covered by a collective bargaining agreement between an Employer and the Union who is engaged in employment with respect to which the Employer is obligated by the collective bargaining agreement to make contributions to the Pension Fund;

(b)    any person employed by an Employer who performs work within the jurisdiction of the Union as said jurisdiction is set forth in any applicable collective bargaining agreement or by any custom or practice in the geographic area within which the Employer operates and his Employees perform work;

(c)    any person on whose behalf an Employer has made contributions to the Pension Fund and has reported same through the Pension Fund's electronic remittance program or on a report form which contains a provision or acknowledgement binding said Employer to the provisions of this Trust Agreement or otherwise evidencing said Employer's intent to be so bound;

(d)    any person employed by an Employer who has signed any memorandum of understanding incorporating by reference the provisions of any applicable collective bargaining agreement and/or the provisions of this Trust Agreement;

(e)    any person who is not covered by a collective bargaining agreement but on whose behalf his Employer is otherwise obligated to make contributions to the Pension Fund in

5

accordance with the provisions of this Trust Agreement who performs work which would be work performed by members of a bargaining unit recognized by the Employer or certified by the National Labor Relations Board if said person's Employer were a party to any of the standard collective bargaining agreements by and between the Union and any of the Associations defined herein; PROVIDED, HOWEVER, that to the extent that this definition includes any person who meets the definition or concept of a "non-bargaining unit employee" and/or who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401(a) of the Internal Revenue Code, the Employee and his Employer must meet all applicable strictures and tests set forth in said Section 401(a) of the Internal Revenue Code; or

(f)    any Employee in a certified or recognized collective bargaining unit represented by the Union.

The term "Employee" shall also mean all eligible persons employed by the Union, on whose behalf the Union shall make payments to the Pension Fund at the times and at the rate of payment specified in a Written Agreement.

The term "Employee" shall also mean all eligible persons employed by the Pension Fund on whose behalf the Pension Fund shall make payments to the Pension Fund, out of the Pension Fund at the times and at the rate of payment specified in a Written Agreement.

**Section 7. EMPLOYER**. The term "Employer" as used herein shall mean any Employer who:

(a)    now or hereafter is a party to a collective bargaining agreement with the Union, requiring periodic contributions to the Pension Fund created by this Trust Agreement or who in the past has

6

been a party to such a collective bargaining agreement, if such agreement has not been terminated by its terms or by operation of law;

(b)    is a party to any memorandum of understanding or memorandum of agreement or similar instrument with the Union, which by its terms incorporates by reference a complete collective bargaining agreement which requires the parties thereto to make contributions to the Pension Fund;

(c)    in writing adopts and agrees to be bound by the terms and provisions of this Agreement as the same may be amended or modified from time to time through a Written Agreement; PROVIDED, HOWEVER, that to the extent that this definition includes any entity or person who meets the definition or concept of a "non-bargaining unit employer," and/or who employs a person who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401(a) of the Internal Revenue Code, the Employee and his Employer must meet all applicable strictures and tests set forth in said Section 401(a) of the Internal Revenue Code; PROVIDED FURTHER, that all non-bargaining unit employers must be in compliance with the Pension Fund's Non-Bargaining Unit Policy and Procedures, as amended from time to time;

(d)    is a party to a Written Agreement, including but not limited to, a contribution report form listing the Employees on whose behalf contributions are remitted and provisions expressly binding such Employer to this Trust Agreement or otherwise evidencing such Employer's intention to be so bound by the making of such contributions;

(e)    by any course of conduct, including but not limited to, oral

7

representations to Employees, representatives of the Union, Trustees, attorneys or other persons, ratifies or accepts the provisions of any collective bargaining agreement which requires contributions to the Pension Fund created hereby or of this Trust Agreement itself, or of any Written Agreement which binds such Employer to make contributions to the Pension Fund, or is estopped to deny such obligation;

(f)    is a member of any of the Associations, or hereafter becomes a member of any of said Associations, named herein or who was a member at any time when representatives of said Associations commenced negotiations of the current collective bargaining agreement on behalf of its members whether or not said membership is held current at all times; or

(g)    is a member of any other multi-employer bargaining unit, or hereafter becomes a member of any of said multi-employer bargaining units, which has a collective bargaining agreement with the Union, whether formalized or existing solely as a matter of custom and practice.

The term "Employer," shall also mean the Union, for the purpose of providing benefits hereunder for the eligible Employees of the Union for whom the Union is obligated to contribute to the Pension Fund. The terms of the Union's participation shall be memorialized in a Written Agreement.

The term "Employer" shall also mean the Pension Fund for the purpose of providing benefits hereunder for the eligible Employees of the Pension Fund for whom the Pension Fund shall make contributions in accordance with the Plan as said term is hereinafter defined. The terms of the Pension Fund's participation shall be memorialized in a Written Agreement.

8

**Section 8. ERISA**. The term "ERISA" as used herein shall mean the Employee Retirement Income Security Act of 1974, any amendments thereto and any regulations promulgated thereunder.

**Section 9. PENSION FUND**. The term "Pension Fund" as used herein shall mean the entire trust estate created pursuant to this Agreement as it may, from time to time, be constituted, including, but not limited to all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds, and other sums payable to the Pension Fund on account of such contracts), all investments made and held by the Pension Fund, all income increments, earnings and profits therefrom, and any and all other property or funds received by the Pension Fund by reason of the Trustees' acceptance of this Trust Agreement for the uses and purposes set forth herein.

**Section 10. PLAN**. The term "Plan" shall mean the program of Pension Benefits to be established by the Trustees pursuant to this Agreement and Declaration of Trust, provided, however, that such program shall be consistent with all applicable laws and regulations including, but not limited to ERISA.

**Section 11. TRUSTEES**.

(a)    The term "Employer Trustees" shall mean the Trustees appointed by the Associations as herein provided, and such Trustees shall represent all Employers as defined herein. All employers bound to this Agreement ratify and confirm the appointment with the Employer Trustees and their successors.

(b)    The term "Union Trustees" shall mean the Trustees appointed by the District Councils of the Laborers' International Union of North America as hereinafter provided who shall represent all Employees as defined herein and their families and beneficiaries, as appropriate, according to the provisions of the

9

Plan.

(c)    The term "Trustees" shall mean the Employer Trustees and Union Trustees collectively who shall have such powers, duties and obligations as set forth in Article III hereof. All Trustees are hereby designated "named fiduciaries" of the Pension Fund.

**Section 12. UNION**. The term "Union" shall mean such representative of the Laborers' International Union of North America and its District Councils that may enter into collective bargaining agreements or Written Agreements requiring contributions to this Pension Fund. Union shall also include any other labor organization whose participation in the Pension Fund has been approved by the Board of Trustees; provided that such labor organization enters into a collective bargaining agreement or other written agreement that provides for participation in the Pension Fund; however, such other labor organizations shall not have representation on the Board of Trustees.

**Section 13. WRITTEN AGREEMENT**. The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to the Pension Fund together with any modification, amendment or renewals thereof, including but not limited to, collective bargaining agreements, memoranda of understanding which incorporate by reference collective bargaining agreements or this Trust Agreement, participation agreements, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Trust Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Trust Agreement and/or the Plan established pursuant hereto.

10

## ARTICLE VI - CONTRIBUTIONS TO THE PENSION FUND

**Section 1. BASIS OF CONTRIBUTIONS TO PLAN**. In order to effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by any Written Agreement as defined herein between the Union or the Pension Fund and the Employer. The rate of contributions shall at all times be governed by the applicable Written Agreement then in force and effect, together with any amendments, supplements, addenda or modifications thereto provided, however, in the case of an Employer who is required to make contributions pursuant to a Written Agreement other than a collective bargaining agreement, the amount of contribution required shall be identical to the amount required by the collective bargaining agreement in effect between the Association and the Local Union having jurisdiction over the geographical area in which the Employees perform work unless the Written Agreement specifies otherwise. It shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable collective bargaining agreement or other Written Agreement. With respect to the amount of contributions required thereby, no Employee shall be permitted to contract or otherwise agree with or permit an Employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 2. EFFECTIVE DATE OF CONTRIBUTIONS.** All contributions shall be made effective as required by the applicable Written Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to said Written Agreement.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.** The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly

33

furnish to the Trustees, on demand, the names of all its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Pension Fund and Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees ("Fund Representative") of all records of the Employer as described in Section 4 of Article VI, in connection with the Employer's obligations to report and pay contributions to the Pension Fund. An Employer's records shall be made available to the Fund Representative at the Employer's place of business at all reasonable times for examination, inspection and copying (at the Employer's expense) for purposes of an audit. In addition, all records as described in Section 4 of Article VI of any affiliate, subsidiary, alter ego, joint venture, successor or related company (including, where applicable, payroll companies) of the Employer shall also be made available to the Fund Representative upon request at all reasonable times for examination, inspection and copying (at the Employer's expense) for purposes of an audit.

All Employers shall be required to maintain records in compliance with Section 209(a)(1) of ERISA and in compliance with all procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Pension Fund commencing with such Employer's participation unless given written authorization for variance by the Administrator. All such records shall be maintained for a period of at least ten (10) years unless earlier destruction of the same is authorized in writing by the Trustees. The Trustees shall require each Employer to designate the classification of all of its employees and if Employer fails to do so, after being requested to do so by the Trustees, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.

Where an audit discloses a difference between hours actually worked by an Employee and hours reported to the Pension Fund by his

34

Employer and where such audit or an investigation discloses any willful violation of any of the requirements of this Trust Agreement or rules and regulations adopted in connection herewith, the owners, officers, directors, or members of such Employer, if a corporation or other incorporated business entity, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment of contributions or other pecuniary or financial loss to the Pension Fund as a result of such conduct. Owners and partners, who are not otherwise incorporated, shall also be personally liable for any underpayments and financial losses to the Pension Fund due to their willful violations as described herein.

**Section 4. DUTY TO COOPERATE**. All Trustees, directors, officers, Employers, Employees, participants or other representatives of any Association or Union party to this Trust Agreement shall be required to assist and cooperate fully with authorized representatives of the Pension Fund, its attorneys, auditors, and other authorized representatives in the prosecution of claims for or against the Pension Fund.

Specifically, an Employer shall provide to the Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the following information for examination, inspection and copying:

(a) All cash disbursements journals, general ledgers, or other documents, including check registers or canceled checks if necessary, showing cash disbursements;

(b) All individual payroll records including certified payrolls where required on particular projects, and quarterly and annual payroll tax returns, including any applicable W-2's/W-3's/1099's;

(c) All individual time and earning records which are the basis of

35

the above-mentioned payroll records;

(d)  All state and federal unemployment tax returns;

(e)  All union or fringe benefit fund reports and proof of payments showing contributions paid to all entities or employees for fringe benefits and dues;

(f)  All other relevant records which would tend to show the Employer's compliance with the terms of the Trust Agreement, including, if requested, copies of contracts, subcontracts, records of project names and locations, job cost records and records showing hours worked by employees on particular projects; and

(g)  All records and documents listed above in subsection (a) through (f) from partnerships, proprietorships, corporations, or other entities under common control with the Employer as defined in 26 U.S.C. 414(c) and related regulations.

Further, in the event no time records or records of hours worked are available which indicate whether such hours are straight time or overtime, all hours paid shall be deemed to have been paid at straight time for the purpose of computing contributions owed.

**Section 5.  BOND OR DEPOSIT.** The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount in cash equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. An Employer may request the return of any cash deposit after twelve-months following the cash deposit, but any cash deposit will only be returned after the Trustees have determined the Employer has complied with the requirements of this Trust Agreement during a twelve-month consecutive

36

period following the cash deposit. At the option of the Trustees, and upon terms and conditions agreeable to the Trustees, the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), nor more than Twenty-Five Thousand Dollars ($25,000.00) or an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees, whichever is greater, secured by a corporate surety, line of credit, or cash bond.

Any such bond must be for a duration of at least twelve (12) months. If an Employer fails and/or refuses to provide the cash deposit or bond as required by the Trustees pursuant to the terms of this Section 5 of Article VI, then the Trustees are authorized and empowered to seek an order in a court of competent jurisdiction to compel the Employer to provide such cash deposit or bond. The Employer shall be liable for all reasonable attorneys' fees and costs incurred in the process to obtain an order to compel a cash deposit or bond.

**Section 6. CONTRIBUTON DUE DATE.** All contributions shall be due and payable on the fifteenth (15th) day of the month next following the calendar month in which Employees perform work with respect to which contributions are required.

**Section 7. DEFAULT IN PAYMENT.** An Employer shall be considered to be delinquent in the payment of contributions if Employer (a) fails to submit a contribution reporting form and pay contributions that are owed by the contribution due date specified in Section 6 of this Article VI, (b) fails to pay contributions on behalf of all Employees, (c) fails to properly compute the contributions that are due for all Employees, or (d) fails to pay liquidated damages, interest, costs or any other charges assessed and/or imposed by the Trustees. The Trustees may take any action necessary to enforce payment of the contributions, liquidated damages, interest, and other amounts due hereunder, including, but not limited to, proceedings at law and in equity.

37

**Section 8. LIQUIDATED DAMAGES.** It is recognized and acknowledged by all parties, including all Employers, that the prompt and accurate payment of contributions is essential to the maintenance and administration of the Pension Fund and the Plan and it would be extremely difficult if not impracticable to calculate the actual expense and damage to the Pension Fund which would result from the failure of an Employer to timely and accurately pay contributions required hereunder. As a result, any Employer not paying contributions within fifteen (15) days from the date they are originally due, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or Twenty-Five Dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer that is a party to or otherwise bound by this Trust Agreement acknowledges that the liquidated damages will be used and are necessary to defer administrative costs arising from the failure to timely and accurately pay contributions to the Pension Fund, and each Employer acknowledges these administrative costs to be minimally ten percent (10%) of the delinquent contributions or Twenty-Five Dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

**Section 9. INTEREST.** Delinquent contributions shall bear interest at such rate as may have been established by the Trustees. The Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest. The Trustees shall have the authority to waive the foregoing interest charge consistent with their fiduciary obligations and Prohibited Transaction Exemption 76-1.

**Section 10. COLLECTION COSTS.** Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions as provided in Section 7 of this Article IV, said Employer shall be liable for all reasonable costs incurred in the collection

process including court fees, attorneys' fees, accounting/audit costs, filing fees, and any other expenses actually incurred by the Trustees in the course of the collection process.

**Section 11. AUDITS AND ASSOCIATED COSTS.** The Trustees shall have the authority to examine, inspect, copy and audit the records of any Employer as described in Sections 3 and 4 of this Article VI, at the Employer's place of business or other location as deemed advisable by the Trustees in their sole discretion, for the purposes of determining the accuracy of an Employer's reporting and payment of contributions to the Pension Fund and/or as they may otherwise deem necessary in the administration of the Pension Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, accounting/audit cost, and any other expenses actually incurred by the Trustees in the course of the action, without regard to whether the Employer did or did not owe delinquent contributions.

In the event an audit determines there are no delinquent contributions due the Pension Fund, other than in situations as noted in the above paragraph, the entire costs of the audit incurred by the Pension Fund shall be paid by the Pension Fund. In the event the audit determines that there are delinquent contributions due the Pension Fund which were intentionally not paid by the Employer, the entire costs of the audit incurred by the Pension Fund shall be assessed against and paid by the Employer. Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by a bank or other institution on which it is drawn and shall include non-payment due to lack of funds on the part of the Employer. The Employer shall bear all of its own costs of the audit.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed and

39

pay a proportion of the audit costs incurred by the Pension Fund, if any, based upon a formula which shall be set from time to time by the Trustees in their discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed.

Section 12. **REFUND OF CONTRIBUTIONS**. Upon application by an Employer, the Pension Fund may refund to the Employer contributions it has paid to the Pension Fund based on a mistake of fact or law, being contributions which were not due and payable to this Pension Fund, provided, however, (a) written application for a refund must be made to the Pension Fund office within sixty (60) months of the date the same were paid to the Pension Fund, and (b) the Pension Fund must determine that the previous receipt and acceptance of said contributions by the Pension Fund has not and will not create any reasonably foreseeable liability on the part of the Pension Fund.

Section 13. **WAIVER OF CHARGES**.  The Trustees shall have the authority to waive all or part of any accounting/audit costs, liquidated damages, interest, attorneys' fees, or collection costs assessable against or due from an Employer for good cause shown as determined by the Trustees in their sole discretion.  The waiver of any accounting/audit costs, liquidated damages, interest, attorneys' fees, or collection costs by the Trustees for one Employer shall not relieve any other Employer of its obligation to make payment of such charges.

Section 14. **PROJECTION OF DELINQUENCY**. Where an Employer is two (2) or more months delinquent in making the contributions required on behalf of its Employees and has failed to submit regular documents showing the Employees who worked for the Employer and the hours worked, the Trustees may project the amount of the delinquency based upon (a) the average of the monthly payments actually made by the Employer for the last three (3) months for which the payments were made, or the average of monthly payments made by the Employer for the last twelve (12) months for which payments were made,

40

whichever is greater, (b) the average of the monthly payments documented by the remittance reports submitted by the Employer without payments for the last three (3) months, or the average of the monthly payments documented by remittance reports submitted by the Employer without payments for the last twelve (12) months, whichever is greater, (c) the number of Employees employed by the Employer under the collective bargaining agreement as determined by the Union multiplied by the contribution rate multiplied by the workweek established in the collective bargaining agreement for the applicable time period, or (d) any other reasonable method of computation. The projection may be used as a determination of payments due for each delinquent month and may be used for purposes of any lawsuit, and no other proof need be furnished by the Trustees to any court and used in any legal proceeding to compute the total payments due from the Employer for all delinquent months, exclusive of accounting/audit costs, liquidated damages, interest, attorneys' fees, and other costs set out in this Article VI. This provision, however, shall not limit the Trustees from seeking a greater amount than the projected delinquency if a greater amount is shown to be owed.

**Section 15. NO WAIVER OF OTHER RIGHTS**. The non-payment by an Employer of any contributions when due shall not relieve any other Employer of its obligation to make payments of contributions.

Each Employer acknowledges and agrees that liquidated damages, interest, and/or other amounts due hereunder in connection with delinquent contributions remain due and owing irrespective of the payment of the underlying delinquent contributions.

The rights and remedies of the Trustees as contained herein are deemed to be for the benefit of the Pension Fund and to be cumulative in nature. Any utilization of a particular remedy in a particular case or the forbearance of the same will not be deemed a waiver of any other remedy permitted hereunder or by law.

**Section 16. COORDINATION WITH COLLECTIVE BARGAINING AGREEMENTS**. In the event an underlying collective bargaining agreement, participation agreement or other Written Agreement contains provisions relating to delinquent payment of contributions or other amounts that specify additional remedies or obligate the delinquent employer to greater amounts of liquidated damages, interest, or attorneys' fees than those set forth herein, the Trustees, at their option, may pursue the additional remedies or impose the greater charges. The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance-arbitration procedures (if any) provided for in the applicable collective bargaining agreement, participation agreement, or other Written Agreement.

**Section 17. PARTICIPATION IN PENSION FUND**. The Trustees may and are empowered, in their sole and absolute discretion, to terminate, on a prospective basis, an Employer's participation in the Pension Fund, whether through a collective bargaining agreement, participation agreement or other Written Agreement, if the Employer has not paid contributions or other amounts due pursuant to this Article VI, is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Pension Fund, or in accordance with any policy adopted by the Trustees from time to time. Nothing in this Section 17 shall affect or otherwise modify the ability of the Pension Fund to assert and enforce any and all other rights (as may be set forth in this Trust Agreement, or any collective bargaining agreement, participation agreement or other Written Agreement, or as may be provided by applicable law) against such Employer for the collection of any delinquent contributions or other amounts owed to the Pension Fund.

**Section 18. WITHDRAWAL LIABILITY**. Each Employer shall pay to the Pension Fund all amounts due as a result of a partial or complete withdrawal from the Pension Fund, as determined by the Trustees in

accordance with ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980. Withdrawal liability amounts shall be payable in the manner and form determined by the Trustees. The Trustees shall have full authority to adopt rules and regulations setting forth procedures for the determination and collection of withdrawal liability which shall be binding on all Employers.

Section 19. **POLICIES AND PROCEDURES**. The Trustees may adopt policies and procedures to carry out the provisions of this Article VI. Such policies and procedures form a part of this Trust Agreement and shall be binding on the Employers as provided therein the same as if they were contained within the body of this Trust Agreement.

**[The remainder of this page is intentionally left blank]**

43

## Signature Page

IN WITNESS WHEREOF, the Associations or Employers and the Union, by their undersigned authorized representatives have executed this instrument on the 17ᵗʰ day of July, 2023.

CHAIRMAN                                    SECRETARY

54

# EXHIBIT "B"



ROMOLO
& ASSOCIATES
Certified Public Accountants

1700 W. Luthy Drive • Peoria, IL 61615
Phone 309.682.2001 • Fax 309.682.2045

June 9, 2017

Central Laborers P,W&A Fund
P.O. Box 1267
Jacksonville, IL 62651

| | |
|---|---|
| Invoice # | 23285 |

For professional services rendered in connection with the
fringe benefit payroll compliance examination on behalf of
the:

Central Laborers Pension Welfare & Annuity Funds for Century Asphalt Construction for
the period January 1, 2011 to February 28, 2017:

| | |
|---|---:|
| Scheduling | 140.00 |
| Field Work | 2,030.00 |
| Processing Report | 150.00 |
| Mileage (250 mi. @ $.535) | 135.00 |

| PAYABLE UPON RECEIPT | TOTAL | $ | 2,455.00 |
|---|---|---|---|

# EXHIBIT "C"



**ROMOLO**
**& ASSOCIATES, LLC**
CERTIFIED PUBLIC ACCOUNTANTS

1700 W. LUTHY DRIVE, PEORIA IL 61615
PHONE 309.682.2001 • FAX 309.682.2045 • romolocpa.com

September 27, 2023

Central Laborers P,W&A Fund
P.O. Box 1267
Jacksonville, IL 62651

Invoice #        32635

For professional services rendered in connection with the fringe
benefit payroll compliance examination on behalf of the:

Central Laborers Pension, Welfare, & Annuity Funds for Century Asphalt & Construction
for the period March 1, 2017 through December 31, 2022:

| | |
|---|---:|
| Scheduling | 75.00 |
| Field Work | 3,278.50 |
| Processing | 185.00 |
| Mileage (215 mi. @ $.655) | 140.83 |



OCT 16 2023

PAYABLE UPON RECEIPT        TOTAL        $        3,679.33

# EXHIBIT "D"

AUDIT COST ASSESSMENT WORKSHEET
**Century Asphalt & Constr.**

CONTRIBUTIONS PAID TO FUND DURING
AUDIT PERIOD                                       $114,776.52

AUDIT DELINQUENCIES                                $213,590.68

PERCENTAGE                                              186%

ACTUAL AUDIT COST                                   $2,455.00

| | | |
|---|---|---|
| IF % = 0 - 1.99% | 0% OF AUDIT COST | $0.00 |
| IF % = 2 - 2.99% | 25% OF AUDIT COST | $613.75 |
| IF % = 3 - 3.99% | 50% OF AUDIT COST | $1,227.50 |
| IF % = 4 - 4.99% | 75% OF AUDIT COST | $1,841.25 |
| IF % = 5 - MORE | 100% OF AUDIT COST | $2,455.00 |

Century Asphalt & Constr. 1.1.11-2.28.17AUD COST

# EXHIBIT "E"

AUDIT COST ASSESSMENT WORKSHEET
Century Asphalt & Constr.
03/01/17-12/31/22

| | |
|---|---|
| CONTRIBUTIONS PAID TO FUND DURING AUDIT PERIOD | $17,461.44 |
| AUDIT DELINQUENCIES | $636,821.59 |
| PERCENTAGE | 3647.02% |
| ACTUAL AUDIT COST | $3,679.33 |

| | | |
|---|---|---|
| IF % = 0 - 1.99% | 0% OF AUDIT COST | $0.00 |
| IF % = 2 - 2.99% | 25% OF AUDIT COST | $919.83 |
| IF % = 3 - 3.99% | 50% OF AUDIT COST | $1,839.67 |
| IF % = 4 - 4.99% | 75% OF AUDIT COST | $2,759.50 |
| IF % = 5 - MORE | 100% OF AUDIT COST | $3,679.33 |

Century Asphalt & Constr. 3.1.17-12.31.22AUD COST

# EXHIBIT "F"

**Revised 7/15/2025**

Century Asphalt & Construction
1302 Heather Rd E
Bourbonnais, IL 60914-5105
Acct#: 12887    C&O

### Audit Liabilities Due (01/01/11-02/28/17):

| | | |
|---|---|---|
| Pension | $ | 83,650.55 |
| Pension Supp | | 51,447.31 |
| Welfare | | 1,297.13 |
| NC Welfare | | 62,344.22 |
| NI Welfare | | 5,105.07 |
| Rtrew | | 76.33 |
| Annuity | | 77,119.36 |
| Training | | 6,659.00 |
| CI LECET | | 67.61 |
| NC LECET | | 1,503.26 |
| CI LEGAL | | 65.40 |
| NC Mktpres | | 4,231.08 |
| NC MRFFC | | 494.77 |
| NC Vacation | | 25,754.31 |
| CI Work Dues | | 468.73 |
| NC Work Dues | | 13,956.20 |
| SC Vacation | | 545.00 |
| Subtotal | $ | 334,785.33 |
| Liquidated Damages | | 33,478.53 |
| Audit Cost | | 2,455.00 |
| Total | $ | 370,718.86 |  $   370,718.86 |

### Audit Liabilities Due (03/01/17-12/31/22):

| | | |
|---|---|---|
| Pension | $ | 181,526.69 |
| Pension Supp | | 213,918.90 |
| NC Welfare | | 281,904.59 |
| NI Welfare | | 35,676.77 |
| Welfare | | 5,319.90 |
| Rtrew | | 269.87 |
| Annuity | | 208,196.43 |
| Training | | 27,589.80 |
| CI LECET | | 275.70 |
| NC LECET | | 6,823.29 |
| NC MRFFC | | 4,125.99 |
| MKTPRES 751 | | 19,800.90 |
| MKTPRES 996 | | 3,952.09 |
| AGCI IAF | | 5,206.25 |
| CI Checkoff | | 236.55 |
| CI LEGAL | | 173.55 |
| NC Vacation | | 109,258.46 |
| Work Dues 703 | | 1,324.74 |
| SC Vacation | | 2,023.75 |
| Working Dues | | 66,948.13 |
| Subtotal | $ | 1,174,552.35 |
| Liquidated Damages | | 117,270.79 |
| Audit Cost | | 3,679.33 |
| Credit from Correction | | (1,844.41) |
| Total | $ | 1,293,658.06 |  $   1,293,658.06 |

**Delinquent Contributions (6,7&10/15 L.751):**

| | | | | |
|---|---|---|---|---|
| Pension | $ | 155.55 | | |
| Pension Supp | | 91.29 | | |
| Annuity | | 133.88 | | |
| Subtotal | $ | 380.72 | | |
| Liquidated Damages | | 38.07 | | |
| Total | $ | 418.79 | $ | 418.79 |

**Delinquent Contributions (5-10/16 L.751):**

| | | | | |
|---|---|---|---|---|
| Pension | $ | 85.40 | | |
| Pension Supp | | 63.56 | | |
| Annuity | | 80.50 | | |
| Sub-Total | $ | 229.46 | | |
| Liquidated Damages | | 22.95 | | |
| Total | $ | 252.41 | $ | 252.41 |

**Delinquent Contributions (8/23,10/23-12/23 L703):**

| | | | | |
|---|---|---|---|---|
| Pension | $ | 5,760.56 | | |
| PSUPP | | 7,668.19 | | |
| Welfare | | 5,579.60 | | |
| Rtre Welfare | | 263.91 | | |
| Training | | 603.20 | | |
| LECET | | 422.24 | | |
| AGCIAF | | 81.50 | | |
| Vacation | | 1,885.00 | | |
| Annuity | | 1,213.95 | | |
| Checkoff | | 635.70 | | |
| Legal | | 122.25 | | |
| DILDC | | 171.15 | | |
| DILPAC | | 36.68 | | |
| LIUED | | 12.23 | | |
| ILLEG | | 81.50 | | |
| MROC | | 101.88 | | |
| Subtotal | $ | 24,639.54 | | |
| Liquidated Damages | | 2,463.95 | | |
| Total Due | $ | 27,103.49 | $ | 27,103.49 |

Report Form Shortages:

| | | | | |
|---|---|---|---|---|
| Jun-22 | Local 751 | $ | 1,229.95 | |
| Jul-22 | Local 751 | | 1,632.12 | |
| Aug-22 | Local 703 | | 2,892.75 | |
| Total | | $ | 5,754.82 | $ 5,754.82 |

Liquidated Damages Assessments:

| | | | | |
|---|---|---|---|---|
| Nov-14 | Local 996 | $ | 387.37 | |
| Dec-14 | Local 751 | | 30.23 | |
| May-15 | Local 751 | | 650.46 | |
| Jul-16 | Local 996 | | 443.10 | |
| Aug-16 | Local 703 | | 144.25 | |
| Jun-22 | Local 751 | | 417.89 | |
| Jul-22 | Local 751 | | 492.38 | |
| Jul-22 | Local 996 | | 240.92 | |
| Aug-22 | Local 996 | | 226.18 | |
| Aug-22 | Local 751 | | 944.26 | |
| Aug-23 | Local 703 | | 812.81 | |
| Oct-23 | Local 703 | | 1,180.88 | |
| Total | | $ | 5,970.73 | $ 5,970.73 |

| | | |
|---|---|---|
| **Grand Total Due** | $ | 1,703,877.16 |